## STATE ex rel. KENAMORE v. WOOD et al.

### In Banc, March 27, 1900.

1. **Prohibition.** The granting or refusal by this court of a writ of prohibition forbidding further proceedings in a cause pending before a circuit court depends upon whether or not the circuit court is without jurisdiction over cases of that class, or, having jurisdiction of the class, whether or not its jurisdiction in the particular case before it has been exceeded.

2. **Equity Jurisdiction:** INJUNCTION. The mere fact that a circuit court is one of general equity powers does not warrant it in issuing a writ of injunction, except in cases falling under some recognized head of equitable jurisdiction.

State ex rel. v. Wood.

3. ——: ——: CLOUD ON TITLE. The jurisdiction of equity to enjoin the casting of a cloud upon title is confined to cases involving real estate.

4. ——: ——: ——: BEER INSPECTION ACT. The Act of March 4, 1899, known as the Beer Inspection Act (R. S. 1899, chap. 117, art. IV), imposes only a personal charge upon individuals, and can form no basis for a proceeding against their property or business.

5. ——: ——: COLLECTION OF PERSONAL TAX. A court of equity has no jurisdiction to restrain collection of a personal tax, or fee, where the bill shows no ground for apprehending that collection will be enforced against complainant's property.

6. ——: ——: IRREPARABLE INJURY: PLEADING. The mere allegation in a bill for an injunction that irreparable injury will ensue, is insufficient. Traversable facts must be stated showing plaintiff to have no adequate remedy at law, or that the threatened injury can not be compensated by an action for damages, as such.

7. ——: ——: ——: STATUTE CONSTRUED. A reasonable construction of section 7 of the Beer Inspection Act (R. S. 1899, sec. 7688), does not contemplate the opening of each barrel or bottle of beer after it is closed, but provides a practical method for inspecting beer and mash at the breweries, without interfering with their operation.

8. ——: ——: MULTIPLICITY OF PROSECUTIONS. A court of equity has no jurisdiction to enjoin criminal prosecutions. *Held*, that the effect of granting an injunction in this case would be to prevent the enforcement of a criminal statute.

9. ——: ——: UNCONSTITUTIONAL TAX. The collection of a personal tax will not be enjoined upon the sole ground that the law authorizing it is unconstitutional.

10. ——: ——: CASE REVIEWED. Upon the facts stated in the bill for injunction in this case it is *held*, that the circuit court had no jurisdiction, because the bill does not state facts sufficient to bring the case within the class in which injunctions may be granted.

BURGESS, J., DISSENTING.

1. Jurisdiction: PLEADING: AMENDMENT. In this case the petition for injunction can only be looked to for the purpose of determining whether or not the circuit court had jurisdiction of the subject-matter. If it had, then the question of the sufficiency or insufficiency of the petition was one for decision by that court, and, if adjudged insufficient, the petition was subject to amendment.

2. **Injunction**: PETITION: IRREPARABLE INJURY. The petition for injunction alleged "that the inspection provided for in the act of May 4, 1899, is an inspection of beer in the packages in which the same is put up for sale, and that owing to the nature of beer and malt liquors such an inspection if carried out will be destructive of plaintiffs' products, and render the same unsalable, and cause great and irreparable damage to their property and business, and prevent them and each of them from properly pursuing their occupation as brewers in this State." This was a sufficient statement of issuable facts, which, if true, would result in irreparable injury.

3. **Beer Inspection Act**: STATUTE CONSTRUED: INSPECTION OF PACKAGES. The several sections of the act of May 4, 1899, when taken together, clearly provide a system of inspection to be made after the beer is manufactured and put up in packages, and not for inspection while contained in tubs or vats at the breweries.

4. **Injunction**: VEXATIOUS PROSECUTIONS: PROPERTY RIGHTS. When property rights will be affected by threatened criminal prosecutions and the writ is necessary to protect such property rights, an injunction will be granted. The right to carry on a legitimate business is a property right, and the allegations in the petition for the injunction in this case sufficiently show that plaintiffs are threatened with serious interference with their business, for which the law would afford them no adequate remedy.

5. ———: PREVENTING MULTIPLICITY OF SUITS. The petition shows that beside eight plaintiffs who join in seeking the injunction there are fifteen other brewers in the State affected by the law in question. Under such circumstances an injunction should be granted to prevent a multiplicity of suits. (Dows v. Chicago, 11 Wall. 108, distinguished.)

6. ———: ACT UNCONSTITUTIONAL. The act in question is a revenue measure, and is invalid because it imposes a tax for general state purposes in excess of the constitutional limitations prescribed by section 6, article X, Constitution of Missouri, and also violates sections 3, 4, 6, and 7, of said article, which require uniformity and equality of taxation. The act being void for this reason, injunction is the proper remedy to prevent the collection of the tax, or inspection fees, thereby imposed.

7. ———: ERRORS: REMEDY. The circuit court having jurisdiction to pass upon all the questions presented by the petition for injunction, the proper remedy for any error in that court is furnished by appeal or writ of error.

---

State ex rel. v. Wood.

---

*Prohibition.*

Rule made absolute.

*Edward C. Crow,* Attorney-General, *Sam B. Jeffries,* Assistant Attorney-General, and *W. M. Williams* for relator.

(1) It is not necessary, in order to justify resort to prohibition, that the proceedings of the lower court should be so far beyond its legitimate authority that they would be held void in a collateral proceeding. "Where a court or judge assumes to exercise a judicial power not granted by law, it matters not (so far as concerns the right to a prohibition) whether the exhibition of power occurs in a case which the court is not authorized to entertain at all, or is merely an excessive and unauthorized application of judicial force in a cause otherwise properly cognizable by the court or judge in question." Railroad v. Wear, 135 Mo. 256; Quimbo Appo v. People, 20 N. Y. 540. The appellate courts will exercise their supervisory control over inferior tribunals by the use of this writ if they exceed the bounds of their legitimate authority, whenever the exigencies of the particular case require immediate action. State ex rel. v. Elkins, 130 Mo. 90; State ex rel. v. Hirtzel, 137 Mo. 447; 16 Ency. of Plead. and Pr., p. 1131. A court of equity may be restrained by prohibition and kept within the proper lines of its jurisdiction, as well as a court at law. Wear's case, 135 Mo. 230. Where the absence of jurisdiction in the lower court is apparent upon the face of the record, the party applying for a writ of prohibition need not show that a plea to the jurisdiction was filed and overruled by that court; nor is such a plea essential where it plainly appears that it would have been a useless formality, or where the proceedings were *ex parte,* and no opportunity was given to present the objection. Havemeyer v. The Superior Court, 10 L. R. A. 648; State ex rel. v. Hirtzel, *supra.* The

lower court, having entertained jurisdiction of the suit for an injunction, and granted a temporary restraining order, the relator herein was not compelled to wait for further action before applying to this court for relief. There is no inflexible rule concerning the stage of the proceedings in the lower court at which an application for prohibition may be made. 16 Ency. of Pl. and Pr., p. 1133. While the circuit court of the city of St. Louis has power to grant injunctions, it is not authorized so to do, unless the case presented to it is one cognizable in equity, and over which a court of equity has jurisdiction. .The circuit courts of this State have no jurisdiction to grant injunctions in ordinary suits at law. The case presented must belong to a .class calling for equitable relief to justify the remedies which can only be obtained in a court of chancery. Holden v. Vaughan, 64 Mo. 588; 1 High on Injunctions (3 Ed.), p. 29; United Lines Tel. Co. v. Grant, 32 N. E. Rep. 1005; 10 Am. & Eng. Ency. of Law (1 Ed.), 792. Notwithstanding the circuit court of the city of St. Louis had power to issue injunctions in proper cases, yet, "if a court of equity in awarding an injunction proceeds without authority or jurisdiction, a writ of prohibition will lie to prevent further proceedings therein by such court." 1 High on Injunctions (3 Ed.), sec. 43; Swinbourne v. Smith, 15 W. V. 483. (2) The lower court, upon the case presented to it, was without authority to restrain the State Beer Inspector from carrying out the provisions of the act of May 4, 1899. Equity has no jurisdiction to restrain the enforcement of a statute imposing an excise duty, a license or inspection fee, or a tax upon privileges or one upon personal property on the sole ground that said statute is in conflict with the Federal and State Constitutions. Thomas v. Rowe, 22 S. E. Rep. 157; Shelton v. Platt, 139 U. S. 591; Allen v. Pullman Palace Car Co., 139 U. S. 658; Franklin v. Apple, 73 S. W. Rep. 259; Yellowstone Kit v. Wood, Tax Collector, 43 S. W. Rep. 1068; United Lines Tele. Co. v. Grant, 32 N. E. Rep. 1005; First Nat.

Bank v. Meredith, 44 Mo. 500; Barlow v. Davis, 46 Mo. 394. One of the principal objects sought to be accomplished by the bill presented to the lower court was to restrain the enforcement of the penalties and forfeitures denounced by section ten of the act, against any person who should sell beer or malt liquor which had not been inspected as required therein. One of the grounds relied upon for relief is that the act in question "provides for heavy fines and penalties and the imprisonment of all brewers who fail to conform to its provisions, and who sell their product without submitting the same to such inspection, and who fail to pay the unconstitutional tax imposed by said act." The fines and forfeitures provided by section 10 are to be recovered by criminal prosecutions. A court of equity has no jurisdiction to grant injunctions against such prosecutions, as was done by the preliminary order of the lower court, and as the plaintiffs evidently seek to have done by the final decree in this case in the circuit court. Yellowstone Kit v. Wood, Tax Collector, 43 S. W. Rep. 1068; Ex parte Sawyer, 124 U. S. 200; Crighton v. Dahmer, 70 Miss. 602; Fitts v. McGhee, 172 U. S. 531; Beach on Injunctions, 574; Machine Co. v. Fletcher, 44 Ark. 139; Hensley v. Myers, 45 Fed. Rep. 283. An injunction, although not issued against the prosecuting attorneys of the State, may violate the rule, that courts of equity are powerless to restrain criminal prosecutions. Crighton v. Dahmer, 70 Miss. 602; Yellowstone Kit v. Wood, Tax Collector, 43 S. W. Rep. 1068; Ex parte Sawyer, 124 U. S. 200. A criminal prosecution can not be restrained by a court of equity even though such prosecution grows out of an unconstitutional statute violative of the complainant's property rights. Fitts v. McGhee, 172 U. S. 531. A court of equity having no jurisdiction to grant an injunction to restrain criminal prosecutions, its decree in such cases is null and void, and a party imprisoned for violating such injunction may be released upon *habeas corpus*. Ex parte Sawyer, 124 U. S. 200. Certainly, if this may be done, prohibition will

lie. Equity has no jurisdiction to restrain the enforcement of an inspection law on the sole ground that the act is unconstitutional. Franklin v. Appel, 73 S. W. Rep. 259. The lower court had no jurisdiction to determine the validity of the act creating the office of beer inspector, and the relator's title to it, and his right to execute the duties thereof. Johnson v. Garrisk, 20 N. Y. Sup. 327. (3) The act of May 4, 1899, is not in conflict with the Federal Constitution. It does not violate section 10, article I, of said Constitution. Said section has reference only to duties on articles imported from foreign countries. Woodfall v. Parker, 8 Wallace, 123. Whether the charge, duty or inspection fee is excessive is not a judicial question. Congress alone has the power to revise the State laws upon that subject. Patapsco Guano Co. v. Board of Agr. of N. C., 171 U. S. 345; Nelson v. Garza, 2 Woods 287. There is no discrimination against beer manufactured in other States, and hence the act does not violate any provision in reference to interstate commerce. Henson v. Lott, 8 Wal. 148. (4) The statute under consideration is not in conflict with any provision of the Constitution of this State. The inspection fee exacted by it is not a tax upon property. Cooley on Taxation, 586; Black on Intoxicating Liquors, sec. 39; State ex rel. v. Hudson, 78 Mo. 303; Albrecht v. State, 34 Am. Dec. 737; State v. Frame, 39 Oh. St. 414. It is within the power of the Legislature to tax the liquor traffic, wholesale, as well as retail, and an act providing for the taxing of such business is not a bill to raise revenue, but simply an exercise of the police powers of the State. 11 Am. and Eng. Ency. of Law (1 Ed.), 592; Black on Intoxicating Liquors, sec. 55. The State has plenary power to regulate the manufacture and sale of intoxicating liquors within its borders. It may entirely prohibit the same, or permit it upon such terms as the Legislature imposes. The State may, in the exercise of its police powers provide for the inspection of beer and other malt liquors by officers chosen for that purpose, and may fix

the charges for such inspection. Having the right to absolutely prohibit, it may authorize the sale and manufacture upon condition that the charges which it makes for its official inspection shall be paid into the state treasury. There is no provision of the state Constitution which requires that the charges for an official inspection shall be limited to the amount of compensation paid to the officer who may do the work for the State and in its name. The State may annex to its permission to manufacture and sell beer and other malt liquors, within its borders, a condition precedent that the inspection fee charged by it shall be paid. It may annex such conditions as to the State may seem best to control and regulate the business. Black on Intoxicating Liquors, sec. 39; State v. Huddington, 33 Wis. 107; Vance v. Vanderhook Co., 170 U. S. 438; Albrecht v. State, 34 Am. Rep. 737; State ex rel. v. Hudson, 78 Mo. 302; Ins. Co. v. Herriott, 80 N. W. Rep. 665. (5) Courts of equity have no jurisdiction to grant relief by injunction where there is a plain, adequate and complete remedy at law. The facts alleged must show the absence of a legal remedy, and this is a jurisdictional matter. The simple allegation that plaintiff is without a remedy at law, and that the damages that he will sustain on account of the threatened action are irreparable, is a mere inference or conclusion. Traversable facts must be alleged from which the court can see, as a matter of law, that jurisdiction in equity exists. Verdin v. St. Louis, 131 Mo. 27; Shelton v. Platt, 139 U. S. 591; Allen v. Pullman Palace Car Co., 139 U. S. 658; Franklin v. Appel, 73 S. W. Rep. 259; United Lines Tel. Co. v. Grant, 32 N. E. Rep. 1005; Yellowstone Kit v. Wood, Tax Collector, 43 S. W. Rep. 1068; Railroad v. Milner, 57 Fed. Rep. 276. (6) A court of equity has no jurisdiction to prevent the collection of a license or excise tax, or a tax upon privileges, on the sole ground that the act of the Legislature imposing said tax is in conflict with the Federal and State Constitutions. Allen v. Pullman Palace

Car Co., 139 U. S. 658. (7) Equity has no jurisdiction to enjoin the enforcement of an inspection law, duly passed by the legislative department on the sole ground that said act was unconstitutional. Franklin v. Appel, 73 N. W. Rep. 259. (8) Equity is without jurisdiction to prevent the institution and prosecution of criminal proceedings on the ground that the act under which they are about to be taken is unconstitutional. Fitts v. McGhee, 172 U. S. 516; Yellowstone Kit v. Wood, Tax Collector, 43 S. W. Rep. 1068; Beach on Injunctions, 574; Machine Co. v. Fletcher, 44 Ark. 139; Butler v. Elerby, 22 S. E. Rep. 425; State v. Penoyer, 37 Pac. Rep. 906. (9) The statute makes it a misdemeanor on the part of the inspector to fail to perform the duties devolved upon him by the act. The lower court, in the proceedings before it, proposed to determine the validity of the act creating the office, and his title to it, and his right to the execution of the duties thereof. Johnson v. Garrich, 20 N. Y. Sup. 327. (10) The mere fact that the circuit court has jurisdiction in equity cases, and the right to issue injunctions, and has general jurisdiction of all that class of cases to which the one pending before it belonged, will not prevent the use of prohibition. These writs may be invoked to check the use of judicial power whenever it is exercised beyond the lines which the law has marked as the limits for the application of such power. "It may be applied to prevent an action by a court in excess of its legitimate authority in a proceeding whose subject-matter falls within the general cognizance of the court, as well as to stay an assumption of power over causes which by their nature are not confided by the court's consideration." State ex rel. v. Scarritt, 128 Mo. 338. Existence of other remedies will not preclude the use of prohibition if the exigencies of the peculiar case requires the use of that writ. State ex rel. v. Elkin, 130 Mo. 109. (11) The order in the case prevented any attempt on the part of the inspector to enforce any portion of the act

of May 4, 1899. This prevented the institution of criminal proceedings under section 10. The only ground upon which that portion of the order may be maintained is that the act was unconstitutional. No property rights could be affected by a proceeding in the criminal courts under that section. It is well settled that an injunction can not go to prevent the institution of criminal proceedings, or the collection of taxes for that matter, on the sole ground that the act sought to be enforced is unconstitutional. It can not be pretended that plaintiff's property right would be involved by the proceeding to inspect the output of other manufacturers or dealers who were ready and willing to have the same inspected, yet the order in this case prevented the same from being done. If it be contended that the allegations of the bill were sufficient to give jurisdiction to the court of equity to prevent the interference of plaintiff's property rights, yet the order entered in this case restraining the defendant from any attempt to enforce the beer inspection law went beyond the jurisdiction of the lower court. (12) There is no question as to the right of this court to issue writ of prohibition against an inferior court in order to keep it within the limits of its lawful authority in a given case, no less to prevent cognizance of causes not committed by law to its jurisdiction. Our contention is that the circuit court of the city of St. Louis had no jurisdiction whatever to entertain the injunction proceedings in the first place; it being instituted without authority of law and beyond the lawful province of the court. Railroad v. Wear, 135 Mo. 230; People ex rel. v. Whitney, 47 Cal. 484; State ex rel. v. Withrow, 133 Mo. 500; Thomas v. Mead, 36 Mo. 233; State ex rel. v. St. L. Court of Appeals, 99 Mo. 216.

*Boyle, Priest & Lehmann, G. A. Finkelnburg* and *Koehler & Reiss* for respondents.

(1) The court is not bound by the terms of the bill, but will inquire into its practical operation and necessary effect

in order to determine its character. Cooley's Const. Lim., 164; Ho Ah Kow v. Nunan, 5 Sawy. 552; Smyth v. Ames, 169 U. S. 466; Railroad v. Huzen, 95 U. S. 465; Minnesota v. Barber, 136 U. S. 313; Brimmer v. Rebman, 138 U. S. 78; Littlefield v. Nebraska, 42 Neb. 223; Vansant v. Harlem Stage Co., 59 Md. 330; State v. Hoboken, 41 N. J. L. 71; State v. Wheelock, 30 L. R. A. 429; City v. Boatmen's Ins. Co., 47 Mo. 150. (2) As in its practical operation and by its necessary effect the bill will produce revenue many times exceeding the expenses of inspection, it must be held to be a revenue measure, and judged accordingly. Ho Ah Kow v. Nunan, 5 Sawy. 552; U. S. v. Tithing Yard, 34 Pac. Rep. 59; Willis v. Standard Oil Co., 52 N. W. Rep. 652; Vanmeter, v. Spurrier, 21 S. W. Rep. 337; Am. Fertilizer Co. v. Board, 43 Fed. Rep. 609; Patapsco Guano Co. v. Board, 171 U. S. 354. (3) Being a revenue as well as an inspection measure, the bill is invalid because not confined to one subject which is clearly expressed in its title. Sec. 28, Art. IV, Mo. Constitution; Ewing v. Hoblitzelle, 85 Mo. 64; State v. Miller, 100 Mo. 439; State v. Morgan, 112 Mo. 202; State v. Bronson, 115 Mo. 271; Lynch v. Murphy, 119 Mo. 163; Wittman v. Railroad, 131 Mo. 612; State v. Persinger, 76 Mo. 346; State v. County Court, 102 Mo. 531; State v. Baker, 129 Mo. 482; State v. Heege, 135 Mo. 112; State v. County Court, 41 Mo. 39; State v. Switzler, 143 Mo. 287-314. (4) As a revenue or taxing measure the bill is invalid because it imposes a tax on property for general State purposes in excess of the constitutional limitations. Sec. 8, Art. X, Mo. Constitution; St. Louis v. Boatmen's Ins. Co., 47 Mo. 150; City v. Spiegel, 75 Mo. 145; State v. Tracy, 94 Mo. 217; Brookfield v. Tooey, 141 Mo. 619; State v. Switzler, 143 Mo. 287; State v. Stephens, 146 Mo. 662. (5) The tax imposed by the bill violates the constitutional provision requiring equality and uniformity in taxation. Secs. 3, 4, 6 and 7, art. X, Mo. Constitution; Gibbons v. Ogden, 9 Wheaton 1; Deal v. Mississippi

Co., 107 Mo. 464; State v. Switzler, 143 Mo. 287; Turner v. Maryland, 107 U. S. 38; Coe v. Errol, 116 Mo. 517; State v. Julow, 129 Mo. 163; State v. Granneman, 132 Mo. 326; State v. Walsh, 136 Mo. 400. (6) The act in prohibiting the brewing of malt liquors out of any other cereals than barley and rice, is a wanton and unwarranted interference with the freedom of industry and rights of property. Secs. 4 and 30, art. II, Mo. Constitution; Art. XIV, Amend. to U. S. Constitution; State v. Addington, 12 Mo. App. 214; People v. Marx, 99 N. Y. 477. (7) The mode of inspection provided by the bill is destructive to the property inspected. Secs. 4 and 30, art. II, Mo. Constitution; Art. XIV, Amend. to U. S. Constitution; People v. Compagnie, 107 U. S. 59. (8) The bill is incapable of being enforced according to its terms. State ex rel. v. Railroad, 146 Mo. 155. (9) As to liquors imported from foreign countries, the bill violates the provision of the Federal Constitution prohibiting the States from laying imposts or duties on imports and exports. Sec. 10, art. I, U. S. Constitution. (10) The bill is invalid because the proceeds of fines and penalties recoverable under it are not applied as required by the Constitution. Sec. 8, art. XI, Mo. Constitution.

*Kehr & Tittmann* also for respondents.

(1) Courts will, at all times, examine a statute and regardless of its recitals, determine its character by its natural and reasonable effect. St. Louis v. Spiegel, 75 Mo. 145; State v. Julow, 129 Mo. 163; Henderson v. New York, 92 U. S. 259; Austin v. Murray, 16 Pick. 126; Mugler v. Kansas, 123 U. S. 623; Muehlenbrink v. Coms., 42 N. J. L. 364; Burlington v. Ins. Co., 31 Iowa 102. (2) The act contains two subjects, one expressed and the other omitted in the title. It therefore violates section 28, of article IV of the Constitution, and is void. City of Kansas v. Payne, 71 Mo. 159;

State v. Burgdoerfer, 107 Mo. 30; St. Louis v. Weitzell, 130 Mo. 616; State ex rel. v. Co. Court, 102 Mo. 537; State ex rel. v. Lafayette Co. Court, 41 Mo. 39; State ex rel. v. Heege, 135 Mo. 112; Henderson v. Ins. Co., 34 N. E. Rep. 565; Coms. Sedgwick City v. Bailey, 13 Kan. 600; Swayze v. Briton, 17 Kan. 625; Shepherd v. Helman, 23 Kan. 504; Railroad v. Sanders City, 9 Neb. 507; Parish of Bossier v. State, 13 La. Ann. 433; Grosvenor v. Duffy, 80 N. W. Rep. 19. (3) As an inspection measure, the act is so imperfect that it can not be carried into effect and is therefore nugatory and void. State ex rel. v. Street Ry. Co., 146 Mo. 155. (4) The necessary effect of the method of inspection provided for by the act, is to injure or destroy the article inspected. Any injury to property whereby its use is destroyed or its value lessened is a taking without due process of law and without just compensation. Matter of Application of Jacobs, 98 N. Y. 98; Mo. Constitution, art. II, secs. 21 and 30; Pumpelly v. Green Bay Co., 80 U. S. 166; Hanson v. Vernon, 27 Iowa 28. (5) To be an inspection fee, the charge must be limited to the necessary or probable expense of the service rendered. If it exceeds that, it is a tax. The total cost of inspection is fixed by the act at $12,000 per annum. The income is $558,000 per annum. Therefore it is a tax. City v. Boatmen's Ins. & T. Co., 47 Mo. 150; City v. Spiegel, 75 Mo. 145; Pace v. Burgess, 92 U. S. 372; Wittler v. Standard Oil Co., 50 Minn. 290; Minnesota v. Barber, 136 U. S. 313; Brimmer v. Rebman, 138 U. S. 78; Mays v. Cincinnati, 1 Ohio St. 268; Tiedeman on Municipal Corps., sec. 123; St. Paul v. Traeger, 25 Minn. 51; Taylor v. Pine Bluff, 34 Ark. 603; Vansant v. Harlem S. Co., 59 Md. 330; State v. Bean, 91 N. C. 554. (6) As a tax measure, the act is unconstitutional and void, because it violates section 4 of art. X of the Constitution in that the property is not taxed in proportion to its value. Cooley's Const. Lim. (6 Ed.), p. 723; Brookfield v. Tooey, 141 Mo. 619; State ex rel. v. Stephens, 146 Mo.

666; Life Ass'n v. Board of Assessors, 49 Mo. 512; Livingston v. City Council, 41 Ga. 21; Livingston v. Paducah, 80 Ky. 656. A tax on the sale of an article is a tax on the article itself. Brown v. Maryland, 12 Wheat. 419; Welton v. Missouri, 91 U. S. 275; State v. Browning, 62 Mo. 591; Cape Girardeau v. Reilly, 72 Mo. 220; State ex rel. v. Tracy, 94 Mo. 217; State ex rel. v. Switzler, 143 Mo. 287. (7) It violates section 8 of article X, in that the tax is in excess of the constitutional limit. Brookfield v. Tooey, *supra*; State ex rel. v. Stephens, *supra*. (8) It violates section 3 of article X, because the tax is not uniform upon the same class of subjects within the State. Laws of Mo. 1879, p. 141; R. S. 1889, secs. 7764, 7765, 7766, 6821, 6896-6922; City v. Spiegel, 75 Mo. 145; City v. Spiegel, 90 Mo. 587; Kansas City v. Whipple, 136 Mo. 475; State ex rel. v. Switzler, 143 Mo. 287; Kansas City v. Grush, 52 S. W. Rep. 286; State v. Moore, 113 N. C. 697; Juniata L. Co. v. Fagley, 187 Pa. St. 193; Knowlton v. Sup. Rock Co., 9 Wis. 410; Atty.-Gen. v. Winnebago, 11 Wis. 35; Woodbridge v. Detroit, 8 Mich. 301. (9) A valid classification for the purposes of taxation must have a just and reasonable basis. State v. Loomis, 115 Mo. 307; State ex rel. v. Miller, 100 Mo. 439; Railroad v. Ellis, 165 U. S. 150; Cooley Const. Lim. (6 Ed.), pp. 481-483; State v. Julow, 129 Mo. 165; Dunne v. Kansas City C. Co. 131 Mo. 1; State v. Granneman, 132 Mo. 326. (10) The act of May 4, 1899, contravenes the Fourteenth Amendment to the Constitution of the United States. Virginia v. Rives, 100 U. S. 313; Ex parte Virginia, 100 U. S. 339; U. S. v. Cruikshank, 92 U. S. 542; Slaughter House cases, 16 Wall. 36; Railroad Tax cases, 13 Fed. Rep. 722. (11) The act of May 4, 1899, contravenes the second clause of section 10, article I, of the Constitution of the United States. Brown v. Maryland, 12 Wheat. 419; Almy v. California, 24 How. 169; Packet Co. v. Keokuk, 95 U. S. 86; Leisy v. Harding, 135 U. S. 100; State v. Shapleigh, 27 Mo. 344; State v. North,

27 Mo. 464; Crow v. State, 14 Mo. 237; State v. Emert, 103 Mo. 241. (12) The appropriation made by section 14, of the act is not in the order of appropriation prescribed by the Constitution. The act, therefore, violates section 43, of article IV, of the Constitution of Missouri. The order in which the appropriations were made appears from date of approval. Laws 1899, pp. 3 to 27.

GANTT, C. J.—This is an original proceeding for a writ of prohibition out of this court to arrest further action by the circuit court of the city of St. Louis in a certain suit now pending therein to obtain a perpetual injunction against the relator herein as State Beer Inspector to restrain him and his deputies from taking any steps whatever to carry out and enforce an act of the General Assembly of Missouri, entitled, "An Act creating the office of Inspector of Beer and Malt Liquors of the State and providing for the inspection of beer and malt liquors manufactured and sold in this State," approved May 4, 1899. [Laws 1899, p. 228.]

It appears from the petition of relator that eight corporations and one individual separately engaged in the manufacture of beer in the city of St. Louis, joined as plaintiffs in a suit in the St. Louis Circuit Court for the injunction.

Relator alleges his appointment to the office of beer inspector by the Governor, and his qualifications as required by the act; that the said eight corporations and single individual were all engaged in the business of brewing beer and other malt products in this State with the purpose of offering the same for sale; that Judges Horatio D. Wood and Franklin Ferris are two of the circuit judges of the said city of St. Louis, duly elected and qualified and acting as such. He then avers that in September, 1899, said bill for injunction was filed in Division No. 5, of the said circuit court over which Judge Wood presides and was in substance as follows:

"Plaintiffs in behalf of themselves and all others in the

State similarly situated, stated they were and for many years had been engaged in the manufacture and sale of beer and other malt liquors; that defendant George R. Kenamore had been recently appointed beer inspector under the Act of May 4, 1899," and then set out the act itself *in haec verba* as it is found in the laws of Missouri 1899, pages 228 to 231 inclusive; that said Kenamore had qualified under the terms of said act and claimed to be entitled to discharge the duties thereof and enforce and carry out the provisions thereof, and has issued a circular letter notifying plaintiffs and all others similarly situated that he intends to enforce said act of May 4, 1899, and every provision thereof and requiring plaintiffs and all other persons similarly situated to submit their products of beer and other malt liquors to his inspection and threatens to exact the tax imposed by said act under the name of inspection fees. They then allege that besides themselves there are other brewers at other cities in the State also engaged in the manufacture and sale of beer and giving a list of them. They then aver that the said brewers of this State annually manufacture not less than 2,250,000 barrels of beer of 31 gallons each, of which they sell in Missouri not less than 975,000 barrels of 31 gallons each; that of said brewers twelve sell their entire product in this State and of the remainder, the majority sell the largest portion of their product in this State but that one of them sells more than two-thirds of its product and another four-fifths of its product, and another one-half of its product outside of this State. That in addition to the persons named as manufacturing beer in this State there are persons, firms and corporations engaged in manufacturing beer in other States, particularly, Illinois and Wisconsin, who annually ship into and sell in this State not less than 165,000 barrels of 31 gallons each, and about 1,500 barrels of beer and ale are imported from Germany and England.

That certain named corporations, firms and persons are

engaged in the manufacture of weissbier to the amount of 5,200 barrels of which 4,000 are sold in this State and 1,200 exported.    That weissbier is a malted fermented liquor brewed from wheat and can not be made from any other cereal. That lager beer is made commonly of hops, malted barley, and of barley, rye, corn, and any other farinaceous cereal which it is convenient for the brewer to use and may properly be made of any farinaceous cereal used in conjunction with hops and malt and such materials so used are entirely wholesome.    That beer, whether wiessbier or lager beer and whatever its manufacture must for the purposes of sale be inclosed in tight packages of glass or wood, and when so prepared for sale by inclosure can not be opened without injury to the contents and are never opened except for immediate consumption; that the average price of beer manufactured in this State exclusive of United States revenue stamps is five dollars per barrel.

Plaintiffs then alleged in said bill for injunction that said act of May 4, 1899, was unconstitutional and void and then proceeded to specify that it violated section 28 of article IV of the Constitution of Missouri, in that it contained more than one subject in its title, and because the title did not indicate the subject of taxation and revenue.    That it also violated section 8 of article X of the Constitution of Missouri, in that it exceeded the maximum rate of taxation allowed by the Constitution.    That it is violative of section 3, article X, of the Constitution in that it violates the principle of uniformity ordained by the Constitution in said section. That it violates section 4, article II, of the Constitution of Missouri which provides that all persons have a natural right to life, liberty, and the enjoyment of the gains of their own industry, etc., and of section 30, article II, which provides that "No person shall be deprived of life, liberty or property without due process of law."    That said act violates said two last mentioned sections of the Constitution in this that the 4th section of said act, which provides that no manufacturers of beer in this State

shall use any substance, material or chemical in the manufacture of beer or other malt liquors "other than pure hops, or pure extract of hops, or of pure barley, malt or wholesome yeast or rice," is an unreasonable, oppressive, and unconstitutional restraint upon a lawful occupation and excludes the use of water which forms the major part of all beer. That the inspection required by the act is of sealed packages, and such an inspection, if carried out, will be destructive of plaintiffs' products and render them unsalable and prevent them from pursuing their occupation in this State. That said act is violative of the Fourteenth Amendment to the Constitution of the United States, and section 2 of article IV, of the Constitution of the United States, among other things, in that it discriminates between the brewer who sells in this State and one who exports his product, taxing the first thirty-nine cents a barrel and the other nothing. That said act of May 4, 1899, is inoperative and void because incapable of execution for the reason that inspection will not determine of what cereals beer is manufactured, and because the inspector and his deputies can not inspect all the beer manufactured from day to day without subjecting the brewers to ruinous delays.

That said act is violative of the Constitution of the United States concerning interstate commerce, being section 8, of article I, as well as section 2, of article IV, section 10 of article I, and section 1 of the Fourteenth Amendment. That said act violates the order prescribed by the Constitution of Missouri as to appropriations by the General Assembly. That the enforcement of said act would work irreparable injury to plaintiffs and their business.

"And plaintiffs further state that besides the irreparable damage which will be inflicted upon their property and business by the inspection of beer as hereinbefore more fully set out, the act in question provides for heavy fines and penalties and the imprisonment of all brewers who fail to conform to

its provisions and who sell their product without submitting
the same to such inspection and who fail to pay the unconstitu-
tional tax imposed by said act; and said act provides that a
prosecution and conviction for failure to comply with the terms
of said act, and of the payment of said tax shall be followed
by a forfeiture of the brewer's right to manufacture and sell
beer or other malt liquors in this State for a period of two
years thereafter, which would cause ruinous damage to plain-
tiff's business and that of others similarly situated in which
much capital is invested, and in which many thousands of
persons are employed. That said pretended right to enforce
said act and to inflict said penalties and forfeitures, and the
said circular letter constitute a cloud on plaintiff's title to their
property and their business and a constant menace thereto."

The said plaintiffs then conclude their petition as follows:

"Wherefore plaintiffs say that they are without an ade-
quate remedy at law, and they now come into a court of equity
and pray for relief under the facts and circumstances herein
stated, and plaintiffs say that unless the relief hereinafter
prayed for is granted the damage to them and all others simi-
larly situated will be irreparable. Wherefore they now pray
that an order of injunction may issue out of this court di-
rected to the defendant, the said George R. Kenamore, claim-
ing to be inspector of beer, enjoining and restraining him, his
deputies, servants and agents, and each of them, from enforc-
ing or attempting to enforce said act of the General Assembly
of May 4, 1899, and from inspecting or attempting to inspect
the beer or other malt liquors manufactured or offered for
sale by plaintiffs, or others similarly situated, and from col-
lecting or attempting to collect any tax or inspection fees under
said act, and from attempting to enforce said act as against
the said retail dealers, customers of plaintiffs, and others
similarly situated, and that said act of the General Assembly
be declared null and void, and for such other and further re-

lief as to this Honorable Court may seem meet and proper under all the circumstances of the case."

It is then averred by relator herein that the Honorable Horatio Wood, Judge of the Circuit Court of St. Louis, Division No. 5, granted the following temporary injunction or restraining order, omitting formal parts:

"Now come the plaintiffs and present their petition and application for a temporary injunction herein, and upon consideration thereof, it is ordered by the court that the defendant, George R. Kenamore, State Inspector of Beer and Malt Liquors, show cause on Wednesday, the 4th day of October, 1899, at 10 o'clock a. m. in Court Room No. 5, why a temporary injunction should not be granted in accordance with the terms of said petition, pending the final hearing of this cause, and that pending the hearing and determination of said application for a temporary injunction, and upon plaintiffs giving bond in the sum of five thousand dollars, to be approved by the clerk, said defendant, George R. Kenamore, Inspector of Beer, as aforesaid, his deputies, servants and agents, be and hereby are restrained from enforcing or attempting to enforce, the act of the General Assembly of May 4, 1899, entitled: 'An act creating the office of Inspector of Beer and Malt Liquors of this State, and providing for the inspection of beer and malt liquors manufactured and sold in this State;' and the said George R. Kenamore, his deputies, servants and agents are hereby restrained from inspecting or attempting to inspect the beer or other malt liquors manufactured or offered for sale by plaintiffs or others similarly situated and from collecting or attempting to collect any tax or inspection fees under said Act of May 4, 1899, and from attempting to enforce said act as against the retail dealers, customers of plaintiffs, and others similarly situated, referred to in the petition in this cause."

Thereupon relator applied to one of the Judges of this Court in vacation and procured a provisional writ of prohibi-

tion against further action in said injunction proceeding.

Relator avers that by said injunction he and his deputies were restrained and forbidden to perform their duties under the act of May 4, 1899, that the said circuit court exceeded its jurisdiction and prayed that it might be prohibited from taking or further entertaining jurisdiction of said injunction.

I. The question for decision is whether this court can properly and lawfully prohibit the circuit court from further taking cognizance of the application made to it by the plaintiffs in said injunction case.

This depends upon whether that court was entirely wanting in jurisdiction to grant said injunction on the showing made in the petition, or whether granting it had jurisdiction in that class of cases, it has not exceeded its jurisdiction.

Whether the circuit court was without jurisdiction altogether, or having jurisdiction of the class of cases in which the injunction was sought it exceeded its jurisdiction, is only ascertainable in this case by the averments in the bill filed in that court and the orders made thereon. The fact that said court was a court of general equity jurisdiction and has the power to issue or direct writs of injunction to issue, will not of itself answer the contention made in this case. Courts of equity are not invested with power to enjoin in any and every case but there must be some special circumstances bringing the case under some recognized head of equity jurisdiction before it will wield the powerful writ of an injunction. By means of the process of exclusion and inclusion we will be greatly aided in reaching the sufficiency of the petition to state a case belonging to a class in which courts of equity are authorized to grant injunctive relief. [State ex rel. McCaffrey v. Aloe, 152 Mo. 466.]

The bill obviously seeks relief upon the idea of the unconstitutionality of the law, irreparable damage, multiplicity of suits, and a cloud upon title.

The àct of May 4, 1899, is incorporated in the bill as the foundation of all the various grounds of relief.

The allegation as to "cloud upon title" is simply that the circular letter of the State Beer Inspector notifying plaintiffs therein that they must submit their product for inspection and his pretended right to enforce the said act will constitute a cloud upon their title to their property and business, and a menace thereto.    That this averment taken in connection with the statement of the provisions of the law itself, fails to bring the plaintiffs within that class of cases in which equity will interpose to prevent a cloud upon title, seems too clear for doubt.    That jurisdiction is limited to cloud upon title to *real estate.*

It would seem to be elementary that in legal parlance cloud upon title arises with reference to real estate only.    [6 Am. and Eng. Ency. of Law (2 Ed.), 150, and cases cited. This is the settled law of this State.    Lockwood v. St. Louis, 24 Mo. 20; Leslie v. St. Louis, 47 Mo. 474; Warrensburg v. Miller, 77 Mo. 56; Sayre v. Tompkins, 23 Mo. 443; Bank v. Kansas City, 73 Mo. 555.]    But in this case the bill negatives all idea of this inspection law affecting the property of plaintiffs therein, in that it is made a purely personal charge against individuals only, and can form no basis, either in law or equity, of a proceeding against their property or business. A failure to pay it can result neither in a judgment, levy or seizure of their property generally or specially, and the bill wholly fails to charge that any suit, lien, levy or seizure is threatened by the inspector in case of a failure or refusal to submit their product to his inspection.    On the contrary, the sole and exclusive remedy is by an indictment or information in a court having jurisdiction over criminal cases.    A court of equity, moreover, has no jurisdiction to enjoin the collection of a personal tax or fee when the bill shows no ground for apprehending that the officer will attempt to enforce its collection against the property of the complainant.

We desist from further discussion of this point because in our opinion no precedent for an injunction under such a state of facts can be found and because such an allegation discloses no equity whatever.

In the natural connection let us now examine the allegation of "irreparable injury."

As to this ground, the jurisdiction rests upon well-settled principles. A mere allegation that irreparable injury will ensue is insufficient. Traversable facts must be stated in the bill, which show that plaintiffs can not have an adequate remedy at law, or that the injury can not be compensated by an action for damages as such. [1 High on Injunctions (3 Ed.), sec. 34; Clarke v. Ganz, 21 Minn. 387.] That a court of equity may enjoin upon some other ground is not the question now, but does this petition aver traversable facts sufficient to state a cause of "irreparable injury." [Dows v. Chicago, 11 Wall. 108; Shelton v. Platt, 139 U. S. 596; Verdin v. St. Louis, 131 Mo. loc. cit. 106 and 107.] The statement of such essential facts is jurisdictional. [Dows v. Chicago, 11 Wall. 108.]

When we recall that by no possibility can the property of plaintiffs therein be disturbed for the collection of the inspection fee, it is plain we must look elsewhere in the petition for the traversable facts, which would work irreparable damage. If found at all, it must be in the allegation that the inspection would necessarily render the beer stale, flat and unsalable by opening the vessels containing it, for that purpose. It is plain, however, that this averment has no other foundation than the act itself and is a legal conclusion drawn by learned counsel from the law. Section 7 of the act is the basis of this contention, and is in these words: "It shall be the duty of such inspector to cause to be inspected all beer or other malt liquors brewed or manufactured or sold in this State, and if he shall find that such beer or other malt liquor has been made from pure hops or the pure extract of hops, or of pure barley, malt

or wholesome yeast, or rice, to place upon the package containing such beer or malt liquor his label, certifying the same has been inspected and made from wholesome ingredients."

The interpretation of this section is one of law. It should receive a reasonable construction, one which would conform to common sense, and at the same time render the act operative if possible. So construed it does not require each barrel or bottle to be opened after it is closed. The learned counsel for the State Beer Inspector, the officer charged with this inspection, say "there is but one practical and intelligent method by which the output of lager beer in this State can be inspected; that is by going direct to the brewery and taking a sample of their mash, and of the beer that they are fermenting. This method would not, in the slightest manner, interfere with or hinder them in their operations, and would at the same time enable the inspector to inspect hundreds and thousands of gallons of beer from the one sample; for as the mash is, so must the beer be. The 'mash' is the material from which the beer is brewed. But should they change the mash after the inspection, they could not possibly change the beer after it was brewed in the fermenting tubs. The fermenting vats are great cooperages, holding each from five hundred to five thousand gallons. Into these the beer is placed for the purpose of fermentation, which is the last act of the brew. After the fermentation the beer is run off into hogsheads, barrels and kegs for the market."

We think the counsel have given a satisfactory and reasonable construction of the act. So that, if the brewers elect to stand upon their construction, that the act is unconstitutional, they need not submit to an inspection, but may refuse to pay the fees therefor, and defend the indictments and informations if any are found, on the ground of the unconstitutionality of the act. On the other hand, if they submit to the law and their brew is inspected in the vats, and large cooperages, no damage whatever can result to their beer from the

inspection, and so this court can say there is no case of *irreparable damage* made out on the face of the petition in the circuit court.

There being, then, neither allegations of traversable facts showing irreparable damage, or the absence of an adequate remedy at law, or cloud upon title, the case stands upon the allegations of the unconstitutionality of the act of May 4, 1899, and the complaint that they would be annoyed by a *multiplicity of prosecutions* for the violation of said act.

Now a court of equity has no jurisdiction to enjoin criminal prosecutions, and yet the petition for the injunction in the circuit court asked and the restraining order prohibited the inspector and his deputies from doing anything to carry out the provisions of the act. He can make no inspections, collect no fees, nor institute any prosecution for violation of the act.

Injunctions to prevent criminal prosecutions have been held so completely beyond the jurisdiction of courts of chancery that their decrees in such cases have been disregarded as absolutely void in collateral proceedings, and parties arrested for contempt for violating their injunctions discharged on *habeas corpus.* [In re Sawyer, 124 U. S. 200.] In this case the mere fact that the injunction is not asked against the prosecuting attorney of the State *eo nomine,* can make little or no difference. This court must look at the effects of said restraining order and prayer for injunction, and determine whether it enjoins, or will enjoin, if granted, the institution of criminal proceedings to enforce the act. Thus in Crighton v. Dahmer, 70 Miss. 602; In re Sawyer, 124 U. S. 200; Yellowstone Kit v. Wood, 43 S. W. Rep. 1068, and New Home S. M. Co. v. Fletcher, 44 Ark. 139, the prosecuting or circuit attorneys were not made parties to enjoin the prosecutions but this did not deter the courts from holding that the purpose of the bills were to enjoin criminal prosecutions, and that courts of equity had no such jurisdiction.

VOL. 155 mo—29

State ex rel. v. Wood.

A case strikingly in point is Fitts v. McGhee, 172 U. S. 516. An act of the General Assembly of Alabama, approved February 9, 1895, prescribed certain maximum rates of toll to be charged on the bridge across the Tennessee river between the counties of Colbert and Lauderdale in that State, known as the Florence bridge. It also provided that if the owners, lessees or operators of the bridge by themselves or their agents, demand or receive from any person a higher rate of toll than was prescribed by the act, he should forfeit $20 for each offense, to be recovered before any justice of the peace in either of said counties. McGhee and Fink, receivers of the Charleston & Memphis bridge, filed a bill in the circuit court of the United States for the northern district of Alabama against the State of Alabama, William C. Oates, Governor thereof, and Fitts, the Attorney-General, alleging among other things that the rates of toll fixed by said act were arbitrary, unreasonable, and amounted virtually to confiscation of plaintiff's property; that said act was unconstitutional and deprived them of their property without due process of law and denied them the equal protection of the law; that the provision imposing the penalty for demanding or receiving higher tolls than prescribed by the act, was intended to deter from questioning the validity of said act; that they were remediless, except by a bill in equity, and prayed for an injunction. The circuit court granted the injunction, and on appeal the Supreme Court of the United States, through Mr. Justice HARLAN, held, first, that the State of Alabama could not be sued in this manner without its assent, at the suit of private persons, and secondly, that the circuit court of the United States, sitting in equity, was without jurisdiction to enjoin the institution or prosecution of criminal proceedings commenced in the State courts; that to do so would be to invade the domain of the courts of common law. Said the court: "The plaintiffs state that the toll-gatherers in their service had been indicted in a State court for violating the provisions of

the act of 1895, in respect of tolls. Let them appear to the indictment and defend themselves upon the ground that the State statute is repugnant to the Constitution of the United States. The State court is competent to determine the question thus raised, and is under a duty to enforce the mandates of the supreme law of the land. [Robb v. Connolly, 111 U. S. 624.] And if the question is determined adversely to the defendants in the highest court of the State in which the decision could be had, the judgment may be re-examined by this court upon writ of error. That the defendants may be frequently indicted constitutes no reason why a federal court of equity should assume to interfere with the ordinary course of criminal procedure in a State court."

To the same effect is the decision in Hemsley v. Myers, 45 Fed. Rep. loc. cit. 286, in which Judge CALDWELL says: "A man who has a full and complete remedy at law to recover damages he suffers can not be heard to say that the damage is irreparable."

But counsel for respondents insist that the act copied into and made part of their bill in the circuit court is not and does not purport to be a criminal statute. By the 12th section of said act it is provided that all prosecutions for fines and penalties under said act shall be either by indictment or information in any court of competent jurisdiction, and by the 10th section it is provided that "any person who shall sell any beer or malt liquors within this State which has not been inspected according to the provisions of this act . . . . . . . . shall be guilty of a misdemeanor, and upon conviction thereof, shall be punished by a fine not exceeding five hundred dollars or by imprisonment in the county jail for a period of not less than six months," etc. If these words do not define a criminal offense, then it will be difficult to find appropriate language for that purpose.

Plaintiffs in the injunction can not be proceeded against

in any other manner than by indictment or information. This is not a mere quasi-criminal proceeding as is the prosecution for violation of a city ordinance; it is a criminal statute of the State, and the allegations of the bill as to "heavy fines and imprisonment" can have no reference to the staying of any other proceeding and the object in view can only be to enjoin these criminal prosecutions. Such prosecutions will not affect defendants' property rights and an injunction is not necessary to preserve their rights to any of their property. [Yellowstone Kit v. Wood, 43 S. W. Rep. 1068; New Home S. M. Co. v. Fletcher, 44 Ark. 139; High on Injunctions (3 Ed.), secs. 20, 68, 272, 1244; Beach on Injunctions, secs. 59, 60, 574.]

The result of our examination is that the petition in the circuit court did not and in the very nature of the case could not under the act of May 4, 1899, allege facts which brought the case under any recognized head of equity jurisprudence. The case stands upon the naked averment that the law is unconstitutional and the inspection fee illegal, the remaining averments wholly failing to make a case under any decision of this court for injunctive relief.

In Dows v. Chicago, 11 Wall. loc. cit. 109, Mr. Justice FIELD, voicing the unanimous judgment of the Supreme Court of the United States in a suit to restrain the collection of a tax levied by the city of Chicago on the ground of its unconstitutionality, said: "Assuming the tax to be illegal and void, we do not think any ground is presented by the bill justifying the interposition of a court of equity to enjoin its collection. The illegality of the tax and the threatened sale of the shares for its payment constitute of themselves alone no ground for such interposition. There must be some special circumstances attending a threatened injury of this kind, distinguishing it from a common trespass, and bringing the case under some recognized head of equity jurisprudence before the preventive remedy of injunction can be invoked. It is upon taxa-

tion that the several States chiefly rely to obtain the means to carry on their respective governments, and it is of the utmost importance to all of them that the modes adopted to enforce the taxes levied should be interfered with as little as possible. Any delay in the proceedings of the officers, upon whom the duty is devolved of collecting the taxes, may derange the operations of government, and thereby cause serious detriment to the public. No court of equity will, therefore, allow its injunction to issue to restrain their action, except where it may be necessary to protect the rights of the citizen whose property is taxed, and he has no adequate remedy by the ordinary processes of the law. It must appear that the enforcement of the tax would lead to a multiplicity of suits, or produce irreparable injury, or where the property is real estate, throw a cloud upon the title of complainant, before the aid of a court of equity can be invoked. In the cases where equity has interfered, in the absence of these circumstances, it will be found, upon examination, that the question of jurisdiction was not raised or was waived." This explicit statement of the law is fully sustained by the great weight of authority in this country. [Cruickshank v. Bidwell, 176 U. S. 73; Shelton v. Platt, 139 U. S. 591; Allen v. Pullman's Palace Car Co., 139 U. S. 661; Union Pac. R'y Co. v. Cheyenne, 113 U. S. 516; Cooley on Taxation, p. 536; United Lines Tel. Co. v. Grant, 32 N. E. Rep. 1005; Franklin v. Appel, 73 N. W. Rep. 259; Thomas v. Rowe, 22 S. E. Rep. 157.] Nowhere is the doctrine more forcibly and correctly stated than in Heywood v. Buffalo, 14 N. Y. 534.

Having examined the various allegations of the bill for injunction in our opinion it did not state a case which fell within the class of which the circuit court had jurisdiction to grant an injunction, for the reason that the alleged unconstitutionality of the law alone furnishes no ground for injunction; and because the circuit court had no jurisdiction to prevent the institution of criminal proceedings by the inspector

by information to punish violations of said act, and because in our opinion the bill, otherwise, charges no traversable facts showing a want of an adequate remedy at law, but on the contrary shows that the courts of law are open to the plaintiffs in said case to make their defense to any prosecution under said act, and that the act of May 4, 1899, does not require an inspector to open sealed packages of beer after they are closed to inspect the same, but may inspect said beer or malt liquors, before put in the closed barrels or bottles.

For these reasons we think the provisional rule of prohibition should be made absolute against Judge Wood and the circuit court over which he presides, but as Judge Ferris took no part in the case it is ordered dismissed as to him. *Brace, Marshall* and *Valliant, JJ.,* concur; *Burgess, J.,* dissents; *Sherwood, J.,* not being present at the hearing, takes no part in the decision; *Robinson, J.,* absent.

BURGESS, J.—I respectfully dissent from the opinion rendered in this case by a majority of the court, which holds that the St. Louis Circuit Court was without jurisdiction of the subject-matter of controversy in the injunction proceeding and that prohibition would lie against the judge of the court before whom the proceeding was pending to prevent him from proceeding with the case, and to annul the restraining order which had theretofore been issued in the case.

The petition in that case omitting the formal parts is as follows:

"Plaintiffs bring this suit on behalf of themselves and all others in the State of Missouri similarly situated, and state that the American Brewing Company, the Anheuser-Busch Brewing Association, the Columbia Brewing Company, the Consumers Brewing Company, the Home Brewing Company, the National Brewery Company, the St. Louis Brewing Association, and the Wm. J. Lemp Brewing Company, the above named plaintiffs, are business corporations, duly organized

under the laws of the State of Missouri, and are each and all of
them authorized by their charters to engage in the manufacture
and sale of beer and other malt liquors, and they are now and
have been for many years past engaged in that occupation in
the city of St. Louis and State of Missouri, and also that Louis
Obert is a citizen of this State, and is engaged in the manu-
facture and sale of beer and other malt liquors, and is now and
has been for many years past engaged in that occupation in
the city of St. Louis and State of Missouri.

"Plaintiffs further state that the defendant George R.
Kenamore has recently been appointed by the Governor of the
State of Missouri as beer inspector, under and by virtue of an
act of the General Assembly entitled: "An act creating the
office of Inspector of Beer and Malt Liquors of the State, and
providing for the inspection of beer and malt liquors manu-
factured and sold in this State," approved May 4, 1899. [The
act is then set out in full, and is to be found in the Laws of
Missouri, 1899, pages 228 to 231, inclusive.]

"Plaintiffs state that the said defendant Kenamore had
qualified under the terms of said act of the General Assembly,
and claims to be entitled to act as such beer inspector, and
entitled to discharge the duties thereof, and claims to be
entitled to enforce and carry out the provisions of said act of
the General Assembly, and to that end has appointed his
deputies as therein provided, and has also issued a circular-
letter notifying plaintiffs and all other persons in this State
similarly situated that he intends to enforce said act of May 4,
1899, and each and every provision thereof, and requiring
plaintiffs and all others similarly situated to submit their
products of beer and other malt liquors to his inspection, and
also threatens to exact the illegal tax imposed by said act
under the name of inspection fees, as hereinafter more fully
set forth. And plaintiffs state that defendant has also sent a
circular letter to the retail dealers in beer and malt liquors in

this State, that is to say, to plaintiffs' customers, pretending that said act of May 4, 1899, is applicable to them, and threatening them with the penalties of said act if they continue to sell beer or malt liquors not stamped in accordance with said act of May 4, 1899.

"Plaintiffs further state that beside these plaintiffs there are other persons, firms and corporations engaged in the manufacture and sale of beer in the State of Missouri, as follows: At Kansas City, Mo.: The Ferdinand Heim Brewing Company, J. D. Iler Brewing Company, G. Muehlbach Brewing Company. At St. Charles, Mo.: Jacob Moerschel, Charles Schibi. At Ste. Genevieve, Mo.: The Ste. Genevieve Brewing and Lighting Association. At St. Joseph, Mo.: The M. K. Goetz Brewing Company, John Jester, the St. Joseph Brewing Company. At Sedalia, Mo.: The Moerschel Brewing Company. At Springfield, Mo.: The Springfield Brewing Company. At Washington, Mo.: John B. Busch. At Weston, Mo.: The Western Brewing Company. At Cape Girardeau, Mo.: The Cape Brewing & Ice Co. At Hannibal, Mo.: Herl-Redlin Brewing Company, Elizabeth Reidel. At Hermann, Mo.: Hugo Kropp. At Jefferson City, Mo.: The Capital Brewing Company. At Appleton, Mo.: Casper Ludwig.

"That the plaintiffs and the persons, firms and corporations last hereinbefore named manufacture annually not less than 2,250,000 barrels of beer of 31 gallons each; of which amount they sell in the State of Missouri not less than 1,275,000 barrels of 31 gallons each; and outside of the State of Missouri not less than 975,000 barrels of 31 gallons each. That of the parties plaintiff and the persons, firms and corporations named, twelve sell their product in the State of Missouri; and that a majority of the remainder sell the largest portion of their product in this State; but that one of the parties above mentioned sells more than two-thirds of its product, and another of the parties sells about four-fifths of its product

outside of the State, and that another one of said parties sells more than one-half of its product outside of this State. That with the exception of the three companies last referred to all the brewers manufacturing in the State of· Missouri, sell either all or the greater portion of their product in the State.

"That in addition to the persons, firms and corporations hereinbefore mentioned as manufacturing and selling beer in the State of Missouri, there are persons, firms and corporations engaged in manufacturing beer in other States and particularly in the States of Illinois and Wisconsin, who annually ship into and sell in the State of Missouri not less than 165,000 barrels of beer of 31 gallons each, all of which will more fully appear by affidavits herewith filed. That in addition there are large quantities of ale imported from other States in the Union.

"That in addition to the foregoing, there is imported into the State by various persons, firms and corporations engaged in the sale of beer, large quantities of beer from foreign counties and especially beer from Germany and ale from England, and that the aggregate amount of beer and ale thus imported from Germany and from England together with the ale imported from other States of the Union and sold in this State amounts in the aggregate to an annual importation and sale of about fifteen hundred barrels.

"That there are engaged in the manufacture of beer known as 'weissbier' the following persons, firms and corporations: At St. Louis, Mo.: The St. Louis Weiss Bier Brewing Company, Schrader Berlina Valena Company, Stecher & Thomas, Wittman-Rost Brewing Company, American Weiss Bier Company, Berliner Imported Weiss Bier Company, Columbia Weiss Bier Company. At Kansas City, Mo.: W. L. Schnick, P. Seltzer & Sons, Bremer & Thoma. That about 5,200 barrels of weissbier are manufactured in this State annually, of which about 4,000 barrels are sold in Missouri, and 1,200 barrels are exported. That 'weissbier'

is a malted and fermented liquor brewed from wheat, and has always been so brewed and can not be made from any other cereal. That lager beer is made commonly of hops, of malted barley, and of barley, rye, corn, and other farinaceous cereal which it may be convenient for the brewer to use, and it may be properly made of any farinaceous cereal used in conjunction with hops and malt in the production of lager beer, and such cereals when so used are entirely wholesome. That beer, whether weissbier or lager beer, and whatever cereals may be used in its manufacture, must for purposes of sale, be inclosed in tight packages of glass or wood, and when so prepared for sale by inclosure in such tight packages, the packages can not be opened without injury to the contents, and are never opened except for purposes of immediate consumption; that to open the same prior to the consumption thereof is to render the beer stale, flat, unpalatable, and sour. And plaintiffs say that the average price or value of beer manufactured and sold in this State, exclusive of United States revenue stamps, is five dollars per barrel of 31 gallons.

"Plaintiffs further state that they are advised and believe and so charge, that said act of the General Assembly of May 4, 1899, hereinabove fully set out, is unconstitutional, inoperative and void, and that it is against common right and of no binding force, validity or effect so far as these plaintiffs and all others similarly situated are concerned, for the following reasons, to-wit:

"1. The said act of the General Assembly of May 4, 1899, violates section 28, article IV of the Constitution of the State of Missouri, which provides that no bill (except certain bills therein specifically designated) shall contain more than one subject, which shall be clearly expressed in its title.

"Plaintiffs state that the said act of May 4, 1899, does not come within any of the exceptions in said constitutional provision enumerated, but that said act, nevertheless, does contain more than one subject, in that it provides specifically of what

material beer and other malt liquors shall be manufactured in this State, and also provides for an inspection of all beer and malt liquors sold in this State; and said act further contains a revenue measure, in this, that the inspection fee authorized by the said act to be charged on account of the inspection of beer and malt liquors is in fact a tax. The entire expense of the inspection, as provided by the act itself, amounts to $12,000 a year, while the inspection fees upon the beer annually sold in this State, as hereinbefore set forth, amount to not less than $555,000, an excess of more than half a million dollars above the cost of inspection, which excess of half a million of dollars is by the terms of the act and by its necessary operation and effect a specific tax upon beer sold in this State, and is levied for the purpose, and is required by the said act to be turned into the general revenues of the State for the uses of such general revenue; and plaintiffs state that said bill as introduced in the Senate of the State of Missouri was recognized by its framer to be a revenue bill, and was entitled when the same was introduced: 'An act creating the office of inspector of beer and malt liquors, and providing for an increase in the general revenue of the State,' and that the said bill was treated throughout as a revenue measure, and was supported as such by those who advocated it and voted for it in the Senate and in the House of Representatives of the Missouri General Assembly; but, nevertheless, the title of the said act, while the same was pending in the Senate, was amended to read as it now stands, and to mention the inspection of beer only, and was left silent as to the other subjects in said act contained, and as thus amended the said act passed the Senate and was sent to the House and there passed, and as the said bill passed the Senate and the House there was nothing in its title to express or indicate that it relates to the subject of taxation or revenue.

"2.   Because said act of the General Assembly is violative of section 8, article X, of the Constitution of Missouri,

State ex rel. v. Wood.

which provides that, 'the state tax on property, exclusive of the tax necessary to pay the bonded debt of the State, shall not exceed twenty cents on the hundred dollars valuation; and whenever the taxable property of the State shall amount to nine hundred million dollars, the rate shall not exceed fifteen cents.'

"And plaintiffs show to the court that in the year 1892 the taxable property of this State reached the sum of nine hundred million dollars in value, of which fact the Governor made due proclamation, and thereupon the rate of taxation for state purposes exclusive of the special tax levied to pay interest on the bonded debt, was by the act of March 24, 1892, reduced to fifteen cents on the hundred dollars, being the maximum rate allowed by the Constitution; and the General Assembly can not now constitutionally tax property for general state purposes in excess of that rate; that said maximum rate of taxation is now and has ever since said year 1892, been imposed upon all property in this State, including beer and all articles entering into the manufacture of beer and other malt liquors; and plaintiffs state that all taxes hitherto imposed by the General Assembly up to said maximum limit upon beer and other malt liquors have been duly paid by plaintiffs as they have become due and payable; that under existing laws they are duly authorized and licensed by the State to manufacture and sell beer and malt liquors, for which authority they and each of them pay a license fee, and they will be obliged to pay said license fee and the said state tax of fifteen cents on the hundred dollars valuation for the current year, and as long as said maximum rate continues to be imposed; but that the act of the General Assembly aforesaid, under the guise of an inspection law, proposes to impose an additional tax of one cent per gallon, which is equal to six dollars and twenty cents on the hundred dollars valuation on all beer or other malt liquors manufactured, owned or offered for sale by plaintiffs and others similarly situated, besides a

tax of two cents upon each package containing eight gallons or less of such beer or other malt liquors, which latter is equal to $1.60 on the $100, making a total of $7.80 on the $100 valuation; that this additional tax is not needed for inspection purposes, but if enforced would yield a net revenue of more than half a million dollars per annum to the State, after deducting the expenses of inspection and collection which are limited to $12,000 per annum in said act; that said act is in truth and in fact a revenue measure, and the proposed levy, impost or tax upon all beer or other malt liquors in this State is a tax on property to be paid into the State treasury, and to be credited to the general revenue fund, and, as shown by the above figures, is enormously in excess of the limit imposed by said section 8, article X, of the Constitution of this State, being in fact fifty-two times as large, and is therefore illegal, unconstitutional and void.

"3.   Because said act of May 4, 1899, violates section 3 of article X of the Constitution of Missouri, which provides that taxes may be levied and collected for public purposes only and that they shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax, and is also in violation of section 4 of said article X, which provides that all property subject to taxation shall be taxed in proportion to its value; and plaintiffs state that said act of May 4, 1899, selects one species of property in this State and imposes an onerous tax of more than seven per cent on the same for state purposes, which tax is not imposed upon any other property within this State and said proposed tax if enforced would impose double taxation upon one and the same species of property, viz.: the general property tax of fifteen cents on the hundred dollars levied upon all property alike, including beer and the materials entering into its manufacture, and a special property tax of seven hundred and eighty cents on the hundred dollars on the same beer, imposed by the act of May 4, 1899.

"And plaintiffs state that said act of May 4, 1899, selects the finished product of the manufacturers of beer and malt liquors in this State and imposes upon them an onerous tax of seven hundred and eighty cents on the hundred dollars, which tax is not imposed upon the finished product of any other manufacturer in the State, nor upon the goods, wares and merchandise of any merchant in the State, in violation of the above recited provision of the Constitution and laws of the State; that no other or greater amount of tax is now levied by law upon merchants in this State or upon manufacturers in this State, than was levied and assessed upon them by law prior to August 20, 1899, except upon the manufacturers of beer and malt liquors as against whom said act of May 4, 1899, creates an arbitrary and unwarranted discrimination in taxation, contrary to the Constitution and laws of the State.

"And plaintiffs state that said act of May 4, 1899, is not uniform in its character as to brewers, but discriminates between the persons engaged in the manufacture and sale of beer in this State, in this, that under the provisions of said act the brewer in Missouri who manufactures for sale within the State is taxed 39 cents per barrel upon his product, while the brewer in Missouri who manufactures for exportation from the State is exempt from such tax, and thereby in fact receives a bounty which is denied the manufacturer whose product is consumed in this State. And plaintiffs say that besides being a discrimination in violation of the rule of uniformity imposed by the Constitution, the act is in violation of sections 6 and 7, article X of the Constitution of Missouri relating to exemptions from taxation, and which prohibit all exemptions of property from taxation, except the classes therein specially enumerated and to which the proposed exemptions in this act do not belong. And plaintiffs state that said act of May 4, 1899, also violates said section 4, article X, in this, that it imposes a specific tax on personal property according to quantity and without regard to value. And plaintiffs further

state that the beer sold in this State is not all of the same value, nor is it sold upon the market at the same price, but such beer is of different values and is sold at different prices, but nevertheless the tax imposed upon the same by said act of May 4, 1899, is one cent per gallon and two cents per package, regardless of value.

"4.   Because said act of May 4, 1899, is violative of section 4, article II, of the Constitution of Missouri, which provides 'that all persons have a natural right to life, liberty and the enjoyment of the gains of their own industry; that to give security to these things is the principal office of government, and that when government does not confer this security, it fails of its chief design.' And also section 30, article II, which provides, that 'no person shall be deprived of life, liberty, or property without due process of law.' And plaintiffs say that said act of May 4, 1899, violates said provisions of the Constitution of Missouri in this, that said act provides that no person or persons engaged in the brewing or manufacture of beer other than malt liquors shall use any substance or material in the manufacture or brewing of beer or other malt liquors other than those mentioned in section 4 of said act, and thereby imposes an unreasonable, oppressive and unconstitutional restraint upon a lawful occupation, and which plaintiffs have been expressly authorized to engage in by the charters and franchises granted to them by the State of Missouri, and an occupation which every citizen of the United States has a right to engage in; that wholesome and harmless ingredients other than those specified in said section 4 may be properly used in the manufacture of beer. And plaintiffs further state that said section 4 excludes corn, wheat, rye, and other farinaceous cereals, which are properly used in the manufacture of malt liquors and that 'weissbier' can not be made without the use of wheat. And plaintiffs further state that said section 4 excludes the use of at least one ingredient, to-wit, water, which is absolutely required; and which forms the

major part of all beers and malt liquors; and plaintiffs say that
the limitations aforesaid are in violation of the rights secured
to the people of this State by the provisions of the Constitu-
tion above referred to and are also against common right
independent of any constitutional provisions.

"Also in this, that the inspection provided for in said act
is an inspection of beer in the packages in which the same is to
be put up for sale, and that owing to the nature of beer and
malt liquors such an inspection if carried out will be destruc-
tive of plaintiffs' products and render the same unsalable and
cause great and irreparable damage to their property and
business and prevent them and each of them from properly
pursuing their occupation as brewers in this State.

"5.    Because said act of May 4, 1899, is violative of
section 1 of the 14th article of amendments to the Constitution
of the United States, which provides that:    'No State shall
make or enforce any law which shall abridge the privileges or
immunities of citizens of the United States, nor shall any
State deprive any person of life, liberty or property without
due process of law, nor deny to any person within its jurisdic-
tion the equal protection of the laws.'    And also violates
section 2 of article IV of said Constitution which provides that
the citizens of each State shall be entitled to all the privileges
and immunities of citizens in the several States.    And plain-
tiffs say that said act of May 4, 1899, violates said provisions
of the Constitution of the United States in this, that said act
provides that no person or corporation engaged in the brewing
or manufacture of beer or other malt liquors shall use any
substance or material in the manufacture or brewing of beer
or other malt liquors other than those mentioned in section 4 of
said act, and thereby imposes the unreasonable, oppressive
and unconstitutional restraint upon a lawful occupation and
upon an occupation which plaintiffs have been expressly
authorized to engage in, and which every citizen of the United
States has a right to engage in; that wholesome or harmless

ingredients other than those specified in said section 4 may be properly used in the manufacture of beer; that corn, wheat, rye, and other farinaceous cereals are wholesome and are properly used in the manufacture of malt liquors, and that weissbier can not be made at all without the use of wheat. And plaintiffs further state that said section 4 of the act of May 4, 1899, also excludes one ingredient, to-wit, water, which is absolutely required and which forms the major part of all beer and malt liquors; and plaintiffs say that said act of May 4, 1899, is an unwarranted, arbitrary and oppressive exercise of government interference in the lawful occupation of a portion of the citizens of the United States and that the limitations and restrictions contained in said act are in violation of the rights secured to the people of the United States by the provisions of the Federal Constitution above referred to, and are also against common right independent of any constitutional provision. Also because the said act of May 4, 1899, violates the above provision of said Fourteenth Amendment to the Constitution of the United States, in this, that said act arbitrarily selects the finished product of the manufacturer of beer and malt liquors and imposes upon such product a tax, other and greater than is imposed upon the finished product of any other manufacturer in the State, or upon the property of any other person or class of persons in the State; that by reason of such arbitrary, unjust and unreasonable discrimination and class legislation said act denies the manufacturers of beer and malt liquors equality before the law and deprives them of the protection of equal laws to which they are entitled. Said act, moreover, discriminates between the manufacturers of beer and malt liquors in this State, in this, that the brewer who manufactures for sale within this State is taxed thirty-nine cents per barrel upon his product, whilst the brewer who exports his product from the State is exempt from such tax.

"6.   Because said act of May 4, 1899, is inoperative and

VOL. 155 mo—30

void for uncertainty and for want of adequate and practical provision in the act to carry it into execution. That it is practically as well as scientifically impossible by any inspection or analysis of beer or malt liquors to determine whether cereals other than those enumerated in the said act have been used in its manufacture, as will more fully appear from affidavits herewith filed. And plaintiffs state that one inspector and four deputies can not inspect all the beer manufactured from day to day in the State of Missouri, without subjecting the brewers to ruinous delays; also that beer can not be made exclusively of the ingredients and substances specified in section 4 of said act, and may properly be made of cereals other than those named in said act; also that in order to inspect beer in the packages in which it is put up for the market as required by said act, viz., barrels, kegs and bottles, such barrels, kegs and bottles must be opened, which would so damage the contents as to render the same unsalable and unfit for consumption, as will more fully appear from affidavits herewith filed.

"7. Because said act of May 4, 1899, is repugnant to the provisions of the Constitution of the United States concerning the regulations of interstate commerce, being section 8 of article I of said Constitution, as well as section 2 of article IV of said Constitution, declaring that the citizens of each State shall be entitled to all the privileges and immunities of citizens in the several States; and to the second clause of section 10 of article I of said Constitution, which provides that no State shall, without the consent of Congress, lay any imposts or duties on imports or exports except what may be absolutely necessary for executing its inspection laws; and is also repugnant to section 1 of the Fourteenth Amendment to said Constitution of the United States, which provides that 'no State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, nor shall any State deprive any person of life, liberty or property with-

out due process of law, nor deny to any person within its jurisdiction the equal protection of the laws.' And plaintiffs say that said act of May 4, 1899, violates the above provisions of the Constitution of the United States in this, that it requires all beer and malt liquors imported into the State of Missouri from other States and territories or foreign countries, while still in original package and before being offered for sale, to be inspected and labeled, and said tax of one cent per gallon and two cents per package thereon to be paid, and also to be accompanied by an affidavit from the manufacturer or other reputable person having actual knowledge thereof, that no material other than those specified in said act were used in the manufacture of said beer or malt liquor, and also that the person or corporation receiving beer or malt liquors for sale from other States and territories or foreign countries, shall, before offering the same for sale, submit the same for inspection as aforesaid, and procure from said inspector a certificate that such beer or malt liquor has been made exclusively of the ingredients specified in said act; all of which plaintiffs state is in violation of the provisions of the Constitution of the United States hereinbefore set forth.

"Plaintiffs state that they were on the 20th day of August, 1899, and now are taxpayers of this State, and as such are interested in the revenue collected and received by the State; that section 43 of article IV of the Constitution of Missouri, under the head of 'Limitation of Legislative Power,' prescribes the order in which the appropriations of the State's revenue shall be made, and provides that 'no General Assembly shall have power to make any appropriation of money for any purpose whatever, until the respective sums necessary for the purposes in said section specified have been set apart and appropriated or to give priority in its action to a succeeding over a preceding item' in the order of appropriation established by said section. And plaintiffs state that the appropriation made by section 14 of the act of May 4, 1899, is ille-

gal and void, because made in disregard of the order of appropriation fixed by said section of the Constitution and was passed before the respective sums necessary for the seven subjects of appropriation enumerated in said section had been made.

"Plaintiffs state that the enforcement of said act of the General Assembly of May 4, 1899, would for reasons hereinabove stated, cause irreparable damage to the business and property of these plaintiffs and all other persons similarly situated in this State. That the number of breweries and persons engaged in the brewing of beer and malt liquors in this State, and who are affected by the terms of said act, is large, and that this action is brought by these plaintiffs for themselves and on behalf of all persons similarly situated in order to avoid a multiplicity of suits, and to prevent irreparable damage to the property and business of each of them.

"And plaintiffs further state that besides the irreparable damage which will be inflicted upon their property and business by the inspection of beer as hereinbefore more fully set out, the act in question provides for heavy fines and penalties and the imprisonment of all brewers who fail to conform to its provisions and who sell their product without submitting the same to such inspection and who fail to pay the unconstitutional tax imposed by said act; and said act provides that a prosecution and conviction for failure to comply with the terms of said act and of the payment of said tax, shall be followed by a forfeiture of the brewer's right to manufacture and sell beer or other malt liquors in this State for a period of two years thereafter, which would cause ruinous damage to plaintiffs' business, and that of others similarly situated, in which much capital is invested and in which many thousands of persons are employed.

"And plaintiffs say that the pretended right of defendant to enforce said act of May 4, 1899, and to inflict the penalties and forfeitures aforesaid, and the circular letter issued to

plaintiffs' customers, constitute a cloud upon the title to their property and upon their right to carry on business, and upon their credit, and constitute a constant and continuous menace to and interference with their business and a threatened invasion of plaintiffs' right to carry on their lawful vocation as manufacturers.

"Wherefore plaintiffs say that they are without an adequate remedy at law, and they now come into a court of equity and pray for relief under the facts and circumstances herein stated; and plaintiffs say that unless the relief hereinafter prayed for is granted the damage to them and all others similarly situated will be irreparable.

"Wherefore they now pray that an order of injunction may issue out of this court directed to the defendant, the said George R. Kenamore, claiming to be inspector of beer, enjoining and restraining him, his deputies, servants and agents, and each of them, from enforcing or attempting to enforce said act of the General Assembly of May 4, 1899, and from inspecting or attempting to inspect the beer or other malt liquors manufactured or offered for sale by plaintiffs or others similarly situated, and from collecting or attempting to collect any tax or inspection fees under said act, and from attempting to enforce said act as against the said retail dealers, customers of plaintiffs, and others similarly situated, and that said act of the General Assembly be declared null and void, and for such other and further relief as to this Honorable Court may seem meet and proper under all the circumstances of the case."

The other material facts are substantially as stated in the opinion.

I make no serious criticism upon the first paragraph in the opinion when taken as a whole, yet there are statements in it, unnecessary to mention, to which I do not subscribe.

While it is conceded that the court granting the injunction is one of general jurisdiction, possessing power to grant

such writs, and that it had jurisdiction over the parties, it is held that the court had no jurisdiction of the subject-matter, because there were no "traversable facts stated in the bill which show that the plaintiffs could not have an adequate remedy at law or that the injury can not be compensated by an action of damages as such, or facts which state a cause of 'irreparable injury.'"

1 High on Injunctions (3 Ed.), sec. 34; Clarke v. Ganz, 21 Minn. 387; Dows v. Chicago, 11 Wall. 108; Shelton v. Platt, 130 U. S. 596; and Verdin v. St. Louis, 131 Mo. loc. cit. 106 and 107, are relied upon as sustaining this position. But these authorities merely go to the sufficiency of a petition to authorize the granting of an injunction, a matter with respect to which the court to whom application is in the first place made, is the sole judge, and which this court has no right to pass upon except as an appellate tribunal.

My position is that the petition in the injunction case can only be looked to in this proceeding for the purpose of determining whether or not the circuit court had jurisdiction of the subject-matter of controversy, and if it had, then the question of its sufficiency is one for its determination and if found to be defective the plaintiffs had the right to amend the same. [Sec. 663, R. S. 1899.]

And "proceedings which are amendable are not void. The very fact that the court can make the amendment shows ex vi termini the proceedings are merely erroneous, or irregular, and that the court has jurisdiction." [Hardin v. Lee, 51 Mo. 241; Hunt v. Loucks, 38 Cal. 372; Parmelee v. Hitchcock, 12 Wend. 96; Cooper v. Reynolds, 10 Wall. 308.] The same rule is announced in Ellis v. Jones, 51 Mo. 180.

"Whether the particular facts on which the court proceeds in that regard are, or are not, sufficient to justify its exercise of jurisdiction, is a question of law, the solution of which either way can not impair the court's right to apply its judicial power in the premises according to its views of the

law and of the facts before it. For instance, where a court
has jurisdiction to render judgments, in ordinary civil causes,
it would be manifestly improper to issue a writ of prohibition
against it on an application alleging that it was about to pro-
nounce such a judgment on a petition which did not state a
cause of action, but which the trial court had held sufficient,
or because the latter had ruled erroneously that the plaintiff
had a legal capacity to maintain the action.

"A mistaken exercise of a jurisdiction with which the
court is, by law, invested does not furnish a sufficient basis for
a prohibition. Such mistake may be reviewed as other errors;
for example, by appeal, but not by a proceeding like this."
[State ex rel. v. Southern Ry. Co., 100 Mo. 59.]

In Bishop v. Superior Court, 87 Cal. 226, it was held that
a writ of prohibition would not lie to restrain the prosecution
of an action by city authorities to condemn a right of way for
a sewer, on account of the absence of an averment or proof
that the city authorities were unable to agree with the defend-
ant, or that the local board of the municipal corporation had
expressly directed the institution of the proceeding, although
the statute under which the proceedings were had provided
that whenever it shall become necessary for the city or town
to take or damage private property for the purpose of rights
of way for drains, sewers and aqueducts and the board of
trustees can not agree with the owner thereof as to the price
to be paid, the trustees may direct proceedings to be taken, to
procure the same. The Missouri statute in regard to the
condemnation of land for public use is substantially like that
of California, and it has always been held in this State that in
case no agreement can be made with the owner of the land
as to compensation, the proceedings are absolutely void, if no
attempt is made before beginning them to come to an agree-
ment with the owner. [Moses v. St. Louis Sectional Dock
Co., 84 Mo. 242; Graf v. St. Louis, 8 Mo. App. 562; Wilkin-
son v. St. Louis Sectional Dock Company, 102 Mo. 130.]

And the proceedings must show the offer and failure to make such agreement. [Graf v. St. Louis, *supra*; Moses v. St. Louis, Sectional Dock Co., 84 Mo. 242.] But notwithstanding the absence of this jurisdictional question in the condemnation proceedings in the Superior Court of California the Supreme Court refused to prohibit it from proceeding with the case. In Croly v. Sacramento, 119 Cal. 229, the writ of prohibition was applied for because of alleged insufficiency of the grounds of the accusation. The court said: "But if the board has jurisdiction to try appellant upon the matters alleged, if properly stated, it has power to determine, in the first instance at least, their formal sufficiency, and this objection should have been made to the board."

So in State ex rel. v. Fournet, 45 La. Ann. 943, it was said that: "The nature and the sufficiency of a cause of action are not to be confounded. The nature of the action determines the question of jurisdiction, and when that sustains the jurisdiction the latter can not be defeated by mere insufficiency of the allegations or of the proofs."

But even if this court had the right to pass upon the sufficiency of the petition for injunction as an original proposition other than for the purpose before stated, it stated a good cause for injunctive relief. The words, "irreparable injury," in passing upon this question, are not to be considered by themselves, but are to be considered along with all other allegations of which they form a part. The petition alleges "that the inspection provided for in said act is an inspection of beer in the packages in which the same is put up for sale, and that owing to the nature of beer and malt liquors such an inspection if carried out will be destructive of plaintiffs' products and render the same unsalable and cause great and irreparable damage to their property and business and prevent them and each of them from properly pursuing their occupation as brewers in this State."

These are issuable facts and which it is alleged will cause

the "irreparable injury." · How could they be more specific, and if true it is perfectly clear to my mind that the damages resulting from such acts would be irreparable. But it is said that this averment has no other foundation than the seventh section of the act itself, and is a legal conclusion drawn by counsel from the law. The court then construes that section, to the exclusion of all others, as meaning that, "There is but one practical and intelligent method by which the output of lager beer in this State can be inspected; that is by going direct to the brewery and taking a sample of this mash, and of the beer that they are fermenting. This method would not, in the slightest manner, interfere with or hinder them in their opera- tions, and would at the same time enable the inspector to in- spect hundreds and thousands of gallons of beer from one sample; for as the mash is, so must the beer be. The 'mash' is the material from which the beer is brewed. But should they change the mash after the inspection, they could not possibly change the beer after it was brewed in the fermenting tubs. The fermenting vats are great cooperages, holding each from five hundred to five thousand gallons. In these the beer is placed for the purpose of fermentation, which is the last act of the brew. After the fermentation the beer is run off into hogsheads, barrels and kegs for the market." It may not be out of place to inquire how the court arrives at these conclusions, in the absence of evidence tending to prove them. They are not matters of which it will take judicial notice, but are susceptible of proof, which the court below had the exclusive right to hear.

This section however provides that it shall be the duty of the inspector to cause to be inspected all beer, and to place upon the package containing such beer his label, certifying that the same has been inspected, etc.

There is not one word said in the act about taking a sample of the mash or of the beer that is fermenting, but the only method indicated by this section or the act is inspection

by the package, as the words, "it shall be the duty of such inspector to cause to be inspected all beer or other malt liquor, and to place upon the package containing such beer or malt liquor his label, certifying that the same has been inspected," etc., clearly means. By section eight it is provided that the "inspector shall be entitled to receive for *inspecting* and *gauging* one cent for each gallon contained in each package. . . . . . The word · *package*, as used in this act, shall be construed to mean any vessel of any kind other than pint and quart bottles in which any beer or malt liquor may be placed for sale, containing eight gallons or less; when said beer or malt liquors are placed in pint or quart bottles, a package, as used in this act, shall be construed to mean not to exceed forty-eight pint bottles or twenty-four quart bottles of beer or malt liquors, *which when manufactured and so bottled must, before sale, be placed in suitable cases containing said number and size of bottles, for inspection and stamping by said State Inspector.*" It is utterly inconceivable to me how there can be a difference of opinion as to the meaning of these sections when taken together, for if the seventh be thought to be indefinite, the eighth says in so many words, that the inspector shall be entitled to receive for inspecting and gauging one cent for each gallon contained in each package, and two cents for labeling each package, and then construes the word package to mean any vessel of any kind other than pint or quart bottles, which when put up in bottles other than pint must, before sale, be placed in suitable cases containing the requisite number and size of bottles, for inspecting and stamping by the inspector, and when beer is placed in vessels containing more than eight gallons, the word "package" shall be construed to mean each eight gallons or fractional part thereof so contained in said vessel. Gauging means to measure, and it is illogical to say that beer could be measured in a package before it is put into it. And with respect to bottled beer the act in so many words requires that it shall be put up in cases

for inspection before sale, and when placed in vessels containing more than eight gallons, the word package shall be construed to mean each eight gallons or fractional part thereof so contained in said vessel. The act thus in the plainest terms provides for the inspection of beer when in some of the vessels indicated by it, and it can not by any fair construction be said that taking a sample of the mash, and the beer which is fermenting, is, or would be, an inspection of beer within the meaning of the act. But this is not all. By the fifth section of the act (and all of them must be construed together) with respect to beer and other malt liquors other than those manufactured in this State, the inspector is required to inspect and label the *packages* containing it just as he is the *packages* of beer manufactured in this State, but no one will contend that he could sample the mash or the beer manufactured out of the State while fermenting. It seems to me that when these sections are considered *in pari materia*, that there is no escape from the conclusion that the legislature intended that the beer should be inspected after it is put in packages. But if there were any doubt upon this question the legislature placed its own construction upon the act defining what a "package" is and that construction is binding upon this court.

Thus it is said: "Any provision in a statute which declares its meaning or purpose is authoritative. Whether it relates to the object of a whole act, or of a single section or of a *word*, it is a declaration having the force of law. It is binding on the courts, though otherwise they would have understood the language to mean something different......It has been said that an interpretation clause should be used for the purpose of interpreting words which are ambiguous or equivocal, not so as to disturb the meaning of such as are plain. It is often inserted for this purpose, or for abundant caution, that there may be no misapprehension though the interpretation so directed is not different from that which the language used would otherwise receive. In such case this

provision leads to no difficulties of construction." [Suther-land on Statutory Construction, sec. 402.]

But even if the statute were of doubtful construction the court below should have been permitted to pass upon it.

It is also held that injunction to prevent criminal prose-cutions will not lie, and numerous authorities are cited to sus-tain this position. That this is the law except where the criminal prosecution will affect property rights, and the writ is necessary to preserve such rights, and to prevent repeated prosecutions wrongfully instituted for the purpose of vexing and harassing the defendant therein, will not be controverted. But when property rights will be affected by such a prosecu-tion and the writ is necessary to protect such rights, injunction will lie. [The State ex rel. Attorney-General v. Schweick-ardt, 109 Mo. 496, and authorities cited.] "The subject-matter of the jurisdiction of equity being the protection of private property and of civil rights, courts of equity will not interfere for the punishment or prevention of merely criminal or immoral acts, unconnected with violations of private right. Equity has no jurisdiction to restrain the commission of crimes, or to enforce moral obligations and the performance of moral duties; nor will it interfere for the prevention of an illegal act merely because it is illegal. And in the absence of any injury to property rights it will not lend its aid by in-junction to restrain the violation of public or penal statutes, or the commission of immoral and illegal acts." [1 High on Injunctions (3 Ed.), sec. 20; In re Debs, 158 U. S. 593; Cranford v. Tyrrell, 128 N. Y. 341; Mobile v. Railroad, 84 Ala. 115.]

So in Hamilton-Brown Shoe Co. v. Saxey, 131 Mo. 212, this court held that while a court of equity will not interfere by injunction simply for the purpose of preventing a crime, it may enjoin acts threatening irreparable injury to property rights, notwithstanding such acts may also be in violation of the criminal law. But interference in such cases is predicated

solely upon the ground of injury to property and the protection of property rights.    [1 High on Injunction (3 Ed.), sec. 68.]

In the City of Atlanta v. Gate City Gas Light Co., 71 Ga. 106, it was held that a court of equity will not enjoin the prosecution of a criminal proceeding, unless it is evident that private property and civil rights will be invaded thereby, then equity will interfere to protect them.

"A court of equity has no jurisdiction in matters merely criminal or merely immoral, which do not affect any right of property. If a charge be of a criminal nature, or of an offense against the public peace, and does not touch the enjoyment of property, jurisdiction can not be entertained.....But if an act which is criminal touches also the enjoyment of property, the court has jurisdiction, but its interference is founded solely on the ground of injury to property." [Kerr on Injunctions (3 Ed.), p. 5.]

And in Hamilton v. Whitridge, 11 Md. loc. cit. 147, the court said:    "But it would be strange, indeed, if when the court's powers are invoked for the protection and enjoyment of property, and may be rightfully exercised for that purpose, its arm should be paralyzed by the mere circumstance that, in the exercise of this jurisdiction, it might incidentally be performing the functions of a moral censor, by suppressing a shocking vice denounced by the law, and amenable to its penalties from the earliest times."

The same rule is announced in Littleton v. Fritz, 65 Iowa, 488; Bank of Ky. v. Stone, 88 Fed. Rep. 383; Central Trust Co. v. Citizens' Street Ry. Co., 80 Fed. Rep. 218.

Courts have frequently enjoined persons from interfering with the traffic upon railroads, the moving of trains, and the destruction of property, and while such acts are criminal offenses under the laws of the States in which they were committed, punishable by indictment, fine and imprisonment,

courts never declined to restrain them upon the ground of their criminal character.

Property not only includes the right to use but the right of disposition, at one's pleasure, and upon such terms and conditions as the owner may see proper, whether it be labor or merchandise, and the business of a person conducted in accordance with law is as much a property right as property itself, and any interference therewith is an injury to the property. [Davis v. Zimmerman, 91 Hun. 489.]

The act in question prohibits these respondents from selling beer and malt liquors manufactured by them without its first having been inspected by the beer inspector, makes them guilty of a criminal offense punishable by indictment or information and imposes upon them severe penalties and forfeitures if they do so, one of which is the forfeiture of the right to manufacture beer for two years. The allegations of the petition for the injunction show that if the provisions of the act are carried out by the inspector that it will greatly interfere with and injure the beer manufactured by them, to their serious injury, for which because of its frequent occurrence the law would afford them no adequate remedy.

But the petition stated grounds for equitable relief, upon the further ground that a multiplicity of suits would be avoided thereby.

Beside the eight plaintiffs in the injunction suit there are at least fifteen other brewers in this State, all of whom are alike affected by the act in question, and under such circumstances injunction will lie to prevent multiplicity of suits.

Thus it was held in Damschroeder v. Thias, 51 Mo. 100, that one of the offices of an injunction is to prevent a multiplicity of suits, where the whole question can be decided in a single proceeding.

In Michael v. St. Louis, 112 Mo. 610, it was held that lot owners seeking to be relieved from local assessments may, to prevent multiplicity of suits, unite in one equitable pro-

ceeding, where there is a community of interests in the questions to be decided.

Sylvester Coal Company v. St. Louis, 130 Mo. 323, is very much like the case at bar. In that case a weighing ordinance was claimed to be invalid, and an unlawful interference with the business of the plaintiffs, and several of them having the same interest joined in a suit to enjoin its enforcement. The city contended that the plaintiffs had an adequate remedy at law, but it was held that the fact that in each of said suits the plaintiff might plead successfully the invalidity of the ordinance as defense thereto did not give them an adequate remedy. That they were entitled to be protected from the expense, vexations and annoyance of such a multiplicity of suits in consequence of their continuance of legitimate business, except in compliance with the conditions of ordinances which it is alleged are utterly void.

The court said: "But is the remedy at law adequate? It must be remembered that the injury complained of here is *continuous*. The ordinances are continuous, and plaintiffs' business is continuous, and, under the ordinances, for each wagon load of coal sold and delivered in violation of the restrictive provisions thereof the plaintiffs each become subject to an action in the municipal courts of the city for such violation. The fact that in each of such suits the plaintiffs might plead successfully the invalidity of the ordinances as a defense thereto, does not give them an adequate remedy. They are entitled to be protected from the expense, vexation and annoyance of such a multiplicity of suits in consequence of their continuance of a legitimate business except upon compliance with the condition of ordinances which it is alleged are and may be utterly void. [Mayor, etc., v. Radecke, 49 Md. 217; Davis v. Fasig, 128 Ind. 271; Rushville v. Rushville Natural Gas Co., 132 Ind. 575; Third Ave. R. R. Co. v. Mayor, etc., 54 N. Y. 159.]

" 'The prevention of vexatious litigation and of a multi-

plicity of suits constitutes a favorite ground for the exercise of the jurisdiction of equity by way of injunction.' [High on Injunctions (3 Ed.), p. 12.] This has been frequently recognized as a ground for the exercise of such jurisdiction in this State. [Swope v. Weller, 119 Mo. 556; Michael v. St. Louis, 112 Mo. 610; Carroll v. Campbell, 108 Mo. 558.] And is an independent ground of equity jurisdiction upon which such courts may interfere to prevent municipal authorities from transcending their powers. [2 Dillon, Mun. Corp. (4 Ed.), secs. 906 and 908, and cases cited above.]

"While under the former system of jurisprudence, in which relief in equity was administered by a different tribunal and by a different procedure from those that gave relief at law, courts of equity have sometimes refused to interfere before the right was established at law (West v. Mayor, etc., 10 Paige, 539), there seems no good reason, under the present system in Code States, where both are blended, why such relief ought not to be granted in the first instance by injunction; and so it was ruled in the analogous cases of Mayor, etc., v. Radecke; Davis v. Fasig, and the Rushville v. Rushville Nat. Gas. Co., above cited, which are on all fours with the case in hand. And so it would seem it must be ruled here, where we have in addition a special and liberal statutory provision in regard to injunction. R. S. 1889, sec. 5510."

While this case and the cases cited therein were predicated upon the noncompliance with city ordinances which were claimed to be invalid, they were *quasi* criminal in their character and the same rule applies as for the violation of a criminal statute.

It was upon this ground, that a bank which was required to pay for its shareholders the taxes assessed upon the shares of the stock held by them respectively, might bring a suit to restrain the collection of taxes illegally assessed upon such shares. [Whitney Nat. Bank v. Parker, 41 Fed. Rep. 402.] To the same effect is Beach on Modern Eq. Jurisp., sec. 22.

"As a general rule, wherever the rights of a party aggrieved can not be protected or enforced in the ordinary course of proceedings at law, except by numerous suits, equity may properly interpose and offer relief by injunction. Upon this ground equity often grants an injunction to restrain wrongful acts which are of a continuing nature, or which are frequently repeated. The separate remedy at law for each violation of the plaintiff's right would not be an adequate remedy, and the ends of justice require in such cases that the whole wrong shall be arrested and concluded by a single proceeding. Such relief equity affords, and thereby fulfills its appropriate mission of supplying the deficiencies of legal remedies. Thus, where a company engaged in the business of buying and crushing seed cotton was in the habit of sending out sacks to farmers to be filled and reshipped to it, and another company engaged in the same line of business persistently procured the sacks so distributed and used them for their purposes, and, though repeated actions of replevin had been prosecuted against them, persisted in so doing, an injunction was granted to prevent a further repetition of the wrong." [Beach on Modern Eq. Jurisp., sec. 644. See, also, section 22 cited *supra*, and Warren Mills v. N. O. Seed Co., 65 Miss. 391.]

In Shafer v. Stull, 48 N. W. Rep. 882, it was held that injunction would lie to restrain the leaving down of a fence, when it has been repeatedly done and its continuance is threatened.

In Carroll v. Campbell, 108 Mo. 550, in speaking of the remedy by injunction it is said: "It is well settled that for an interruption of this right an injunction will lie, particularly when, as in this case, the injury is of a continuous nature, and committed under a claim which indicates a continuance or frequent and constant repetition of it. Courts of equity take cognizance of these cases to prevent the vexation and harassment of continued disturbances, prevent a multiplicity of suits,

and to preserve the right by restraining the commission and repetition of threatened injury."

It is upon this principle that strikers have been enjoined from interfering with the business of railroads and persons, and destroying their property. While in all such cases the owner of the property has a remedy at law, it is inadequate, besides by proceeding by injunction a multiplicity of suits may be avoided. The injunctive petition is full, and specific upon these theories of the case, and stated all that was necessary to entitle the plaintiffs therein to the relief sought.

Dows v. Chicago, 11 Wallace, 108, which is the chief corner stone of the majority opinion in this case, was a suit by injunction begun in the circuit court of the United States to restrain the collection of a tax levied by the city of Chicago upon shares of stock in a national bank owned by the plaintiff, and upon appeal to the Supreme Court of the United States it was held that a suit in equity will not lie to restrain the collection of a tax upon the sole ground that the tax is illegal, but there must exist in addition some special circumstances bringing the case under some recognized head of equity jurisdiction, such as that the enforcement of the tax would lead to a multiplicity of suits or produce irreparable injury. In that case the suit was by a single individual, who had an adequate remedy at law, and there was no pretense that the injunction would prevent a multiplicity of suits, while in the case at bar numerous persons whose interests will be similarly affected, joined in the suit, in order thereby to avoid a multiplicity of suits, which with respect to that question brings the case clearly within the rule announced in that case. Besides, that case was an equitable proceeding by injunction. The court below sustained a demurrer to the bill upon the ground that it failed to state a cause of action, and its ruling was affirmed by the appellate court. But no one will claim that the writ of prohibition would have been available in that case to prevent the trial court from passing upon

the question as to the sufficiency of the petition. Such is not the purpose of the writ. And if the court had jurisdiction to decide that the petition did not state a cause of action, it had the same jurisdiction to decide that it did state a cause of action.

The most important questions involved in this whole controversy are with respect to the validity of the act under consideration, which plaintiffs in the injunctive proceedings, respondents here, insist is in conflict with the state and federal Constitution upon various grounds which are specifically set forth in the petition for injunction, but these questions while of the gravest and most important character were passed over as not deserving consideration.

The right of the respondents to injunctive relief depends upon the validity of the act, and how this case could be disposed of without passing upon its constitutionality unless its unconstitutionality be conceded, I am at a loss to know. It is quite true that if these questions had been passed upon and decided adversely to respondents, that they could have taken the case by appeal or writ of error to the Supreme Court of the United States for review, and thereby protracted the litigation, but as they were not passed upon that court could acquire no jurisdiction of the case, so no appeal will lie, but this of course, was not the reason for not passing upon these questions. In my humble opinion the act, whatever may be said in it to the contrary, is a revenue measure, and is invalid because it imposes a tax upon property for general state purposes in excess of the constitutional limitations. [Sec. 8, article X, Constitution of Missouri.]

That it is also violative of sections 3, 4, 6 and 7, article X, Constitution of Missouri, which require uniformity and equality in taxation.

But as the constitutional questions are not passed upon in the opinion, I am not disposed to enter into a discussion of them.

If then, as I contend, the act is void because violative of the Constitution, injunction to restrain the collection of the tax or inspection fees is the proper remedy.

In Overall v. Ruenzi, 67 Mo. 203, the court held that injunction was the proper remedy to prevent the collection of a tax levied in excess of the legal limit, saying:

"In regard to the propriety of an injunction on the facts stated, various authorities cited on either side have been examined, but we deem it necessary only to state the conclusions we have reached without any review of the cases. It would be difficult, if not impossible, to reconcile the authorities, either here or elsewhere. But it is quite apparent that of late years, whether by reason of our statute in regard to injunctions, first introduced into the Revised Code of 1865, or upon the general ground of expediency, this court has been disposed to regard with favor proceedings which are preventive in their character, rather than to compel the injured party to seek redress after the damage has been accomplished. We see no objection, therefore, to the rule adopted in this case to test the validity of the tax."

This doctrine was reasserted and applied in Valle v. Ziegler, 84 Mo. 214, where it was held that injunction was the proper remedy to prevent the enforcement of the collection of taxes against personal property which was not subject to taxation.

In Arnold v. Hawkins, 95 Mo. 569, the court followed Overall v. Ruenzi, *supra*, in allowing injunction in behalf of taxpayers to prevent the collection of taxes levied in excess of the constitutional limit, the plaintiff having paid all the taxes except those which he claimed were illegal. See, also, Dennison v. City of Kansas, 95 Mo. l. c. 430. The principle was also applied in Book v. Earl, 87 Mo. 246, and in Railway Company v. Apperson, 97 Mo. 300, where the court said that injunction is the proper remedy to prevent the enforcement of the collection of taxes levied without authority, the court

saying, page 310: "Numerous decisions of this court attest that the remedy that plaintiff asks is the proper one in cases of this sort," citing Valle v. Ziegler, 84 Mo. 214; Book v. Earl, 87 Mo. 246, and Cooley on Taxation (2 Ed.), 763, and cases cited there.

In Michael v. St. Louis, 112 Mo. 610, while the court decided against the plaintiffs on the merits, it was held that all the owners seeking to be relieved from illegal assessment, to prevent multiplicity of suits, may unite in one proceeding where there is a uniformity of interest in the question to be decided. And in Damschroeder v. Thias, 51 Mo. 100, the court said that one of the offices of an injunction is to prevent a multiplicity of suits where the whole question can be decided by one and the same proceeding.

In Rubey v. Shain, 54 Mo. 207, it is held that it is not only the right but the duty to resort to a court of equity for injunctive relief to prevent the collection of an illegal tax, for the taxpayer would have no right of action against the collector. And again in Ranney v. Bader, 67 Mo. 476, it is held that where the assessment of taxes is illegal, the remedy of the taxpayer is by proceeding to arrest the execution of the illegal assessment and the collection of the tax.

In passing upon a similar question in Dennison v. City of Kansas, 95 Mo. 416, it is said: "In the cases of Ranney v. Bader, 67 Mo. 476, and Newmeyer v. Railroad, 52 Mo. 81, it is held that, to prevent the collection of an illegal tax, suit may be brought by any taxpayer for himself and all others similarly situated." It was held that injunction was the proper remedy in that case. So in Valle v. Ziegler, 84 Mo. 214, it was held, that injunction was the proper remedy to prevent the enforcement of. the collection of taxes against personal property not subject to taxation.

My conclusion is that the circuit court had jurisdiction to pass upon all the questions presented in the petition for injunction, and that the petition showed a *prima facie* case for

relief, and that if the court erred an appeal or writ of error furnishes a complete and effective remedy for any error of that court. And this being the case the writ of prohibition will not lie, and was in the first place improvidently issued. [Mastin v. Sloan, 98 Mo. 252.]

This is but the announcement of a familiar principle of law, which is conceded by all and denied by none. But even if the question of jurisdiction in the circuit court were doubtful prohibition is not the proper remedy. [19 Am. & Eng. Ency. of Law, 271, and authorities cited; Hassinger v. Holt, 34 S. E. Rep. 728; High Extraordinary Legal Remedies (3 Ed.), sec. 780.]

For these reasons I think the writ should be denied.