Cunningham, presiding judge.
The controversy which occasioned this lawsuit grew out of the withdrawal from the Amalgamated Society of Carpenters and Joiners (hereinafter referred to as the Amalgamated Society), or a branch of that organization that was operating in Denver, of a very large number of its members. Prior to this withdrawal, the branch or society had deposited a considerable sum of money with the appellant, The Central Savings Bank & Trust Company (hereinafter referred to as the bank), this deposit having been made for the purpose, on the part of the Amalgamated Society or branch, of establishing a checking account with the said bank. The' officers who orig *439 inally made the deposit, and who were made co-defendants of the bank, were among those members who withdrew, and thereupon a controversy arose as to who was entitled to the deposit, and who had authority to sign checks. The bank, under these circumstances, declined to honor any checks, or to pay over the money. Thereupon the Amalgamated Society and its officers brought a proceeding, which their counsel insist was an action to quiet title to the funds in the bank. Such preliminary proceedings were had as that an injunction was issued against the old officers of the society who had withdrawn from it, restraining the bank from recognizing its co-defendants, or either of them, as members of the Amalgamated Society, or paying out, removing or transferring the fund until the further order of the court. On the final hearing of the case the preliminary injunction was made perpetual, the hank was ordered and required by said decree to keep and perform its contract with the Amalgamated Society as a depositor according to its rules and the statutes of the state, and the Bank was enjoined from further refusing or declining to credit or pay interest on the fund deposited, which apparently under its rules and the original agreement made at the time of the deposit, it was legally required to do. The trial court found that the title to the fund was in the society, and that the withdrawing members, co-defendants with the bank, had no interest therein. With this finding of the court as to the title of the fund we are in entire accord, and while it may well be questioned whether the plaintiffs pursued the best course in bringing their action in the form in which it was brought, we are not disposed to disturb the judgment as to any of the appellants, save and except the savings bank. As to it, we think the" preliminary injunction and final decree cannot be upheld. The deposit of the money by the society with the bank created the relationship of debtor and creditor as between *440 the society and the bank, and a court of equity ordinarily has no authority to require a debtor to keep and perform his contract with a creditor. The law affords the creditor a speedy and adequate remedy, and to it, rather than to a court of equity, the creditor imist look for relief. If creditors are permitted to bring their actions in a court of equity and enforce the decree rendered in their favor by contempt proceedings, such courts would soon become the sole resort of creditors, and our prisons would need to be greatly enlarged.
Ordinarily an action to qniet title to personal property will not lie.
“The subject-matter o£ equitable jurisdiction to quiet title or remove a cloud is generally held to be confined to land, including the surface of the ground, and everything that is on it and under it, and not to extend to persciial property.” — 32 Cyc., 1308; Fudickar v. East River Co., 109 Calif., 29; 41 Pac., 1024; Red Diamond Clothing Co. v. Steidemann, 120 Mo. App., 525, 97 S. W., 220; State ex rel. v. Wood, 155 Mo., 425, 56 S. W., 474, 48 L. R. A., 596; 6 Am. & Eng. Enc. of Law (2nd Ed.), 150.
There are exceptions to this rule, and this court, in Eagan v. Mahoney, just handed down, {ante, 285) recognizes these exceptions. But the comparatively few cases wherein the right to maintain an action to quiet title to personal property has been upheld, such as Magnusen v. Clithero, 101 Wis., 501, 77 N. W., 882, and N. Y. & N. W. R. R. Co. v. Schuyler, 17 N. Y., 592, have every one presented some exceptional circumstance or condition which made it apparent that the plaintiff had no sufficient or ade-. quate legal remedy at law. Such is not the case here, so far, at least, as the hank-is concerned. There was nothing to prevent the plaintiffs from drawing a check on the hank and presenting it for payment. If the bank refused to .pay, then it had a clear remedy at law in which all the difficulties, we believe, presented in this case could have *441 been promptly disposed of. It is important that the almost limitless power of a court of equity, when properly invoked, should be confined to those cases wherein the law affords no speedy or adequate relief.
If it be said that our conclusions already announced may oblige the appellees to bring another action against the bank, our answer is that this is a result for which alone the appellees are responsible. If they have improperly secured a decree from a court of equity against the bank, that decree must be reversed, even though it should lead to the misfortune of further litigation. But the trial court having found the title of the fund to be in the appellees, and that the bank’s co-defendants are in no wise entitled to interfere with it in any manner, and we having upheld the findings and decree of the trial court to this extent, we are unwilling to believe that the bank, from mere caprice or a litigious spirit, will decline to recognize the rights of appellees to the fund. So long as there was a dispute as to the title to the fund, the bank was well within its right in declining to honor checks on the same until that dispute had been finally settled, especially as it does not appear that the appellees offered to indemnify the bank against any loss which might be occasioned to it by the honoring of thein checks. In its answer the bank alleges that, “it simply wishes the court’s decision as to who is entitled to check and draw upon the fund and money in this defendant’s hands.” This allegation, we are bound to believe, was made honestly, and now that the question as to the title to the fund has been finally determined, there ought, it seems, to be no room for further controversy. The amount of the money in the bank; the circumstances under which it was deposited; the interest which the appellees are entitled to receive upon it, and all such matters, are admitted by the bank, leaving for' determination, so far as the bank is concerned, the sole questions of the title *442 to the fund, and the right of the appellees to a decree in equity against it.
Decided July 14, A. D. 1913.
Rehearing denied September 15, A. D. 1913.
The judgment of the trial court, in so far as it affects the bank, will be reversed, and in so far as it affects the bank’s co-defendants, the judgment of the trial court will be affirmed. All the costs will be taxed to the bank’s co-defendants. The judgment of the trial court is modified, and the case remanded for further proceedings in conformity with the views herein expressed. ■

Modified and Affirmed.